By the Couet.
 

 Four questions are presented by this record: First, did the respondent designate to the civil service commission of Ohio the position of chief of the division of boiler inspection as a position from which exemption was claimed from the competitive classified service, within 30 days after taking office? Second, is the chief of the division of boiler inspection an assistant within the meaning of the term as used in paragraph (a), subsection 8,
 
 *514
 
 Section 486-8, General Code? Third, does paragraph (a), subsection 8, Section 486-8, General Code, contravene Section 10, Article XV, of the Constitution of Ohio? Fourth, does the record disclose an attempt by respondent to discriminate against the relator for political reasons only, and thus show a clear violation of Section 486-17, General Code? Of these in their order.
 

 First, the respondent was appointed to his office of director of industrial relations on the 14th day of January, 1929, his appointment was ratified by the Senate, and he took the oath of office on said date. He did not give bond until the 16th day of January, upon which day he was placed upon the pay roll of the state and entered upon the performance of his duties. In the interim he performed no official acts, was entitled to and drew no salary, and had not given bond.
 

 An examination of Section 154-14, General Code, discloses that such officer “shall, before entering upon the duties of his office, take and subscribe an oath of office as provided by law
 
 and
 
 give bond # # *
 

 We are of opinion that the phrases “entering upon the duties of his office” and “taking office” mean the same thing. It is apparent that the time of “taking office” by the respondent was not until January 16th. Such being the fact, the claimed exemption of the 14th day of February was within the 30 days of the 16th day of January, hence within the time prescribed by the rule made by the civil service commission as authorized by Section 486-7, General Code, which rule was to the effect that the exemption should be claimed “within thirty days after taking office.”
 

 
 *515
 
 Second, was the chief of the division of boiler inspection an “assistant,” within the meaning of the term as used in paragraph (a), subsection 8, Section 486-8, General Code?
 

 The administrative code of Ohio provides, among other things, in Section 154-3, as follows:
 

 “The following administrative departments are
 
 created. * * *
 
 The department of industrial relations, which shall be administered by the director of industrial relations, hereby created * * *.”
 

 By Section 871-24, General Code, it is provided: “All duties, liabilities, authority, powers and privileges conferred and imposed by law upon the * * * chief inspector of steam boilers
 
 * * *
 
 are hereby imposed upon the industrial commission of Ohio * # *
 
 >)
 

 By Section 154-45, General Code, it is provided: “The industrial commission of Ohio
 
 shall he a part of the department of industrial relations
 
 for administrative purposes in the following respects: * * * All clerical,
 
 inspection
 
 and other agencies for the execution of the powers and duties vested in the said industrial commission shall be deemed to be in the department of industrial relations
 
 * *
 
 *.”
 

 It is further provided by Section 154-3, which section creates the various administrative departments, among which is the department of industrial relations, that “the director of each department shall, subject to the provisions of this chapter, exercise the powers and perform the duties vested by law in such department.”
 

 An assistant director is provided for in Section 154-5, General Code, who shall be either chief of the division of mines, factory inspection, or labor statis
 
 *516
 
 tics, or one of the heads of one of the divisions provided for in Section 154-8. This section authorizes the director of the department to consolidate any two or more of those named in Section 154-6, or to reduce the number, or create new divisions in such department. From the official roster of state offices, compiled by the secretary of state, and of which we may take judicial notice, we learn that as now constituted the department of industrial relations consists of the following divisions:
 

 (1) Workmen’s compensation, of which the industrial commission and safety and hygiene are a part; (2) labor statistics and employment offices; (3) mines and mining; (4) boiler inspection; (5) examiners of steam engineers; (7) factory and building inspection.
 

 Each of these divisions has a chief, who is the recognized head of such division within the department of industrial relations. Clearly the word “assistants,” as used in paragraph- (a), subsection 8, of Section 486-8, General Code, does not refer to the assistant director contemplated in Section 154-5, because the director might have chosen two “assistants” under Section 486-8, whereas Section 154-5 refers to only one “assistant.”
 

 The office of chief of the division of boiler inspection being thus within the purview of the department of industrial relations, he was clearly within its jurisdiction and a subordinate of the director thereof. As such chief of the division of boiler inspection, he was an “assistant” to the head of the department, as an agent through whom the duties and purposes of the department were accomplished. The subordinate of one in an official position is nec
 
 *517
 
 essarily an assistant, looking toward the accomplishment of the common object. We think the term was so used by the Legislature in paragraph (a), subsection 8, Section 486-8, General Code.
 

 Third, does paragraph (a), subsection 8, Section 486-8, General Code, contravene Section 10, Article XV, of the Constitution of the state of Ohio?
 

 That provision of the Constitution recites: “Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision.”
 

 An examination of the debates of the Ohio Constitutional Convention, vol. 2, page 1378, indicates that the practical operation of this article was to be left to the Legislature to carry into effect by the enactment of proper laws. The section in question, Section 486-8, is one of the laws within the purview of the constitutional provision, and, as such, if we can give the same a construction consistent with the Constitution, it is our duty so to do. If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, it is the duty of the court to adopt that construction which, without doing violence to the fair meaning of the language, will render it valid.
 
 State
 
 v.
 
 Kendle,
 
 52 Ohio St., 346, 39 N. E., 947;
 
 State, ex rel. Weinberger,
 
 v.
 
 Miller,
 
 87 Ohio St., 12, 99 N. E., 1078, 44 L. R. A. (N. S.), 712, Ann. Cas., 1913E, 761.
 

 We think that the construction given the word “assistants” in the section under consideration is
 
 *518
 
 a reasonable one, and within the legislative intent in the passage of the law in question, and that the same is not inconsistent with the constitutional requirements. The constitutionality of Section 486-8, General Code, was recognized in
 
 State, ex rel. Bryson,
 
 v.
 
 Smith, Secy. of State,
 
 101 Ohio St., 203, 128 N. E., 261. See, also,
 
 Hile
 
 v.
 
 City of Cleveland,
 
 118 Ohio St., 99, 160 N. E., 621.
 

 Fourth, does the record disclose an attempt by the respondent to discriminate against the relator for political reasons?
 

 This ground of the petition for mandamus is based on Section 486-17, General Code, which provides against lay-offs, suspensions, discharges, or discriminations because of political or religious reasons or affiliations. This section applies to the classified service, and, the relator having been exempted therefrom by the civil service commission, the same is not available as a ground of mandamus.
 

 Upon a review of the entire record, the majority of the court are of opinion that the relator has failed to show a clear right to the extraordinary remedy of mandamus, and the dismissal of his petition by the Court of Appeals will therefore be affirmed.
 

 Judgment affirmed.
 

 Kinkade, Robinson, Matthias and Day, JJ., concur.