ESSELBURNE, APPELLANT, V. OHIO DEPARTMENT OF AGRICULTURE ET AL., APPELLEES.

(No. 84AP-791—Decided May 7, 1985.)

Peter C. Esselburne, pro se.
Anthony J. Celebrezze, Jr., attorney general, and William S. Lavelle, for appellees.

STRAUSBAUGH, J. This is an appeal by appellant from the judgment of the common pleas court affirming the order of the State Personnel Board of Review in finding that said order is supported by reliable, probative and substantial evidence and is in accordance with law; and further finding that R.C. 124.11(A)(8) authorizes the action taken by appellee Ohio Department of Agriculture and that appellee complied with all the requirements of the Ohio Administrative Code in effecting the desired personnel changes.

Appellant sets forth the following single assignment of error:

"The trial court erred in holding that the decision of the State Personnel Board of Review is supported by reliable, probative and substantial evidence and is in accordance with law where the decision was:

"1. Contrary to law;

"2. Not supported by reliable, probative and substantial evidence."

The record indicates that on March 18, 1983, appellant was sent a letter stating:

"Dear Pete:

"We regret to inform you that you are being laid off from your position effective as of the date shown above (a). This action became necessary due to the fact that your present position has been exempted to an unclassified position persuant [sic] to Section 124.11(A)(8) of the Ohio Revised Code.

"Your displacement and layoff is based on Department of Administrative Services Administrative Rule [Chapter] 123:1-41 and your retention points rate as shown in (b) above. Also shown above is your status (c), class title (d), position control number (e), and rate per hour (f).

"* * *"

Subsequent paragraphs informed appellant of his right to appeal, his right to displace other employees, his right to convert accrued unused sick leave to cash and his right to be on the recall list for future employment, closing with "Your past service to the Department of Agriculture is appreciated. Sincerely, Ohio Department of Agriculture," signed by the Director, Dale L. Locker, and N. Eugene Brundige, Deputy Director for Administration.

Upon appeal, the hearing officer made the following report and recommendation:

"To the Honorable State Personnel Board of Review:

"This cause came on for hearing on June 1, 1983, upon the appeal of Peter C. Esselburne from an order laying him off from his position as Attorney 2 with the Department of Agriculture. Appellant appeared and was represented by Ms. Judy Stoothoff. Appellee was represented by Mr. Eugene Brundige, Designee, and Mr. Loren L. Braverman, Assistant Attorney General.

## "FINDINGS OF FACT

"1. Appellee employed Appellant as an Attorney 2 for approximately three (3) years, beginning in January, 1980. Appellee always treated Appellant's position as though it were included in the classified service and there is no suggestion this was incorrect.

"2. On February 14, 1983, Appellee's new Director, Mr. Dale L. Locker, who took office January 10, 1983, forwarded a letter requesting exemption of Appellant's position from the classified service under the authority of R.C. § 124.11(A)(8) to Director William Sykes of the Department of Administrative Services. A copy of this letter was admitted into evidence as Exhibit 3. This request was processed by Administrative Services and, on February 17, 1983, Mr. William Denihan, Deputy Director for Personnel, forwarded a let-ter approving Mr. Locker's request. See Exhibit 4.

"When an Appointing Authority, as was the case here, wishes to exempt an occupied position under the authority of R.C. § 124.11(A)(8), the Director of Administrative Services requires the classified position be treated as abol-ished [sic] and its incumbent laid off. Appellee did so in this case and, based upon the testimony adduced at the hearing, I find Appellee properly computed Appellant's retention points, properly furnished Appellant with a notice of layoff, made all of the necessary communications with the Director of Administrative Services and, in every other respect, followed the applicable rules of the Director of Administrative Services.

"3. Only one employee — an administrative Secretary — whose position was exempted, was, arguably, a Stenographer. The other two, Appellant's [sic] and Public Information Officers were termed 'assistants'.

"4. Appellant never reported to the Director, himself. Instead, at the time his position was 'abolished', Appellant reported through Mr. Tony Logan, whose title was Deputy Director and Chief Counsel.

## "CONCLUSIONS OF LAW

"R.C.§ 124.11(A)(8) permits an Appointing Authority to exempt '. . . two secretaries, assistants, or clerks and one personal stenographer . . .' Because Appellant's position was occupied when Appellee filed its exemptions, the problem is finding a mechanism to give voice to R.C. § 124.11(A)(8) without, simultaneously, doing extreme violence to the concept of a merit system based upon competitive examination. I believe the solution chosen by the Director of Administrative Services comes as close as possible.

"To put it bluntly, the 'abolishment' of Appellant's position is a legal fiction. The duties which comprised Appellant's

position remain and are performed, in full, by an employee who has replaced Appellant. Normally, an abolishment based upon such a transparent fiction would be disaffirmed as an exercise of bad faith. *Howie* v. *Stackhouse,* 590 [*sic* 59 Ohio] App. 2d 98, 392 N.E. [2d] 1081 (1977).

"In this case, however, Appellee has explicit statutory authority to create an unclassified position. Assuming there are not sufficient duties to create two positions — and nothing in the record indicates there might be — efficiency and economy of the service require that one of the positions not be filled. In this case, if Appellee is to have its unclassified position, Appellant must be laid off.

"Creation of an unclassified position is explicitly authorized by the General Assembly. Although it works a hardship on Appellant, I am unaware of any other mechanism by which this statutory mandate might be accomplished. Given these considerations, I conclude Appellee has acted reasonably and in compliance with all applicable rules of the Director of Administrative Services.

"Accordingly, I RECOMMEND Appellant's appeal be DISMISSED."

On July 1, 1983, the State Personnel Board of Review adopted the recommendation of the hearing officer, which order appellant appealed to the common pleas court, which affirmed the order of the State Personnel Board of Review and from which judgment this appeal is taken.

The law relating to this case is set forth principally in the following three cases: *State, ex rel. Bryson,* v. *Smith* (1920), 101 Ohio St. 203; *State, ex rel. Myers,* v. *Blake* (1929), 121 Ohio St. 511; and *State, ex rel. Townsend,* v. *Berning* (1939), 135 Ohio St. 31 [13 O.O. 318]. In *Bryson,* the Supreme Court denied relator's prayer for a writ of mandamus to compel the defendant Secretary of State to appoint to a position of cashier in the automobile department in the office of Secretary of State one of three candidates certified to him by the Ohio Civil Service Commission. The court referred to Section 10, Article XV of the Ohio Constitution at 206:

" 'Appointments and promotions in the civil service of the state, the several counties and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision.' "

The court, in commenting on this section, stated:

"This provision came into the constitution as an expression of a deep conviction in the public mind that the civil service of the state should, as far as possible, be removed from influences which undermine efficiency, whether such influences are partisan or otherwise. The general assembly and the courts have no more imperative duty than to provide for and enforce compliance with the letter and spirit of this constitutional mandate." *Id.*

The court observed at 207 that it is not in all instances practicable to ascertain merit and fitness by competitive examinations, which was recognized by the General Assembly in the statute which provides: " 'The competitive class shall include all positions and employments now existing or hereafter created in the state * * * for which it is practicable to determine the merit and fitness of applicants by competitive examinations.' " The court held that a reading of the job description therein showed that the occupant of the position not only performed duties which demanded that he should be of strict integrity and high moral character but that he necessarily sustains an intimate fiduciary relation to the Secretary of State; further holding that merit and fitness of the occupant of such position cannot be determined by competitive examination because the largest and most

important element of such fitness is that of integrity and character which cannot be discovered by competitive examination. The court concluded at 210 that "the position is one of those contemplated by the constitution as to which it is not practicable to ascertain the merit and fitness of applicants by competitive examination."

In *State, ex rel. Myers,* v. *Blake, supra,* relator Myers asked that a writ of mandamus be issued ordering Blake as Director of the Department of Industrial Relations to recognize relator as the lawful incumbent of the position of Chief of the Division of Boiler Inspection. The court held that four questions were presented by the record: the first, which the court answered in the affirmative, was whether the respondent should designate to the Civil Service Commission of Ohio the position of Chief of the Division of Boiler Inspection, as a position from which exemption was claimed from the competitive classified service, within thirty days after taking office. The second was whether the Chief of the Division of Boiler Inspection was an "assistant" within the meaning of the term used in paragraph (a), Subsection 8, Section 486-8 of the General Code. With respect to the second question, the court took judicial notice that, as then constituted, the Department of Industrial Relations consisted of seven divisions, one of which was boiler inspection and that, as Chief of the Division of Boiler Inspection, relator was a subordinate of the director and as such was an "assistant" to the head of the department, as an agent through whom the duties and purposes of the department were accomplished; the subordinate of one in an official position is necessarily an assistant, looking toward the accomplishment of the common object.

With respect to the third question, the court held that the designers of the provision of the Constitution left to the legislature to carry into effect the practical operation of the constitutional article in question by the enactment of proper laws. The court held that if a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, it is the duty of the court to adopt that construction which, without doing violence to the fair meaning of the language, will render it valid, citing *State* v. *Kendle* (1895), 52 Ohio St. 346. The court held that the construction given the word "assistants" in the section was a reasonable one and within the legislative intent in the passage of the law in question and was not inconsistent with the constitutional requirements.

With respect to the fourth question of whether the record disclosed an attempt by the respondent to discriminate against the relator for political reasons, the court stated that a majority of the court were of the opinion that the relator had failed to show a clear right to the extraordinary remedy of mandamus.

The Supreme Court in the third case, *State, ex rel. Townsend,* v. *Berning, supra,* held that where a person has taken and passed a competitive civil service examination for the position of tax clerk, has been duly appointed to such position, has faithfully performed the duties thereof and is one of a number of tax clerks similarly appointed and serving in the office of county treasurer, such appointee is entitled to continue to hold such position the same as others of like tenure and service, subject to statutes specifically providing for removal or suspension, and may not be supplanted by a new employee appointed as tax clerk pursuant to the exemption provision for clerks contained in the General Code. The court distinguished the positions involved in the *Bryson* and *Blake* cases, stating at 35 that "[t]he *Bryson* case involved the position of a cashier handling large sums of money with a fiduciary relationship to the prin-

cipal, where the most important elements necessary, integrity and character, were not ascertainable by competitive examination. In the *Blake* case this court held that Blake, as chief of the division of boiler inspection, was in reality an assistant to the head of the department, an agent through whom the duties and purposes of the department were accomplished." The court quoted with apparent approval from the opinion of the court of appeals:

" 'It is clear in the instant case that the position occupied by the relator is not one in which any fiduciary relationship to his principal exists, and it is also clear that his merit and fitness for such position could be ascertained by a competitive examination, for, in the first place, they were so ascertained, and, in the second place, clerks of exactly the same status are carrying on the same work as their fellow employee, and these clerks are in the classified service, and their merit and fitness were ascertained by a competitive examination.' " *Id.* at 36.

The court concluded by stating:

"It is contended by respondent that there is an element of personal loyalty involved in the position of tax clerk here in question, such element having attached when the exemption was designated and the new appointment made by respondent. But such element was not a part of the competitive examination taken and passed by the relator and by virtue of which he received a valid appointment. After such an appointment is made, loyalty to good government and obedience to constituted authority is presumed. The relator met that test as is evidenced by the dismissal letter of respondent wherein he stated: 'We thank you for your past services, which have been faithfully performed.' " *Id.* at 36-37.

In each of the cases reviewed, the Supreme Court looked at the nature of the duties and the responsibilities to determine the position of an assistant. In the first two cases, the Supreme Court held that the relators were in the unclassified service, whereas in *Berning,* the Supreme Court held that relator was not an assistant and that respondent's attempt to declassify was contrary to the statute and the Constitution.

An examination of the record in the present case indicates an absence of any evidence or testimony as to the duties or responsibilities of appellant's position. The mere fact that appellant is an attorney and occupies a position as Attorney 2 with the Department of Agriculture does not describe appellant's duties or responsibilities.[1] There is no evidence that appellant herein was the chief of a division within the department, such as Myers in the *Blake* case, nor that appellant performed duties which demanded that he be of strict integrity and high moral character or that he sustained an intimate fiduciary relationship to the office holder, as in *Bryson.* Instead, the status of appellant herein may be no different than the relator in *Berning.*

Of the three Supreme Court decisions referred to, *supra,* pertinent to the basic issue before us, only *State, ex rel. Townsend,* v. *Berning* involves the same issue before us since only that case involved application of former G.C. 486-17a, presently R.C. 124.34. The syllabus rule of *Berning* is that:

"Where a person has taken and passed a competitive civil service examination for the position of tax clerk, has been duly appointed to such position, * * * and is one of a number of tax clerks similarly appointed * * *, such appointee is entitled to continue to hold such position the same as others of like tenure and service, subject to statutes specifically providing for removal or

---

[1] See footnote 2, *infra.*

suspension, and may not be supplanted by a new employee appointed as tax clerk pursuant to the exemption provision for clerks contained in paragraph 8 of subsection (a) of Section 486-8, General Code."

Former G.C. 486-8a is presently R.C. 124.11(A)(8). Accordingly, the import of the syllabus rule of *Berning* is that a person duly appointed and having tenure in the competitive classified civil service cannot be supplanted by a new employee appointed pursuant to R.C. 124.11(A)(8).

This controlling and determinative issue was neither raised nor determined by the other two cases and accordingly they are not authority upon that issue and do not detract from this court's being bound by the syllabus rule of *Berning.* See *State, ex rel. Gordon,* v. *Rhodes* (1952), 158 Ohio St. 129 [48 O.O. 64], paragraph one of the syllabus.

*State, ex rel. Bryson,* v. *Smith, supra,* involved the question of whether the Secretary of State was required to appoint one of three candidates certified from an eligible list for the classified position of cashier or could fill that position by appointment of a person not so certified by making the position unclassified pursuant to the provisions of former G.C. 486-8. There was no supplanting of a classified employee as was involved in *Berning, supra,* and in this case.

Although *State, ex rel. Myers,* v. *Blake, supra,* apparently involved a change of a position from classified to unclassified, it is not clear that it involved the supplanting of a classified employee by a different classified employee. More importantly, no issue was raised or determined as to tenure rights of the incumbent of the position (Chief of the Division of Boiler Inspection in the Department of Industrial Relations) pursuant to former G.C. 486-17a (now R.C. 124.34). Instead, *Myers* involved an issue as to whether the change of the position from classified to unclassified constituted an attempt to discriminate against the incumbent for political reasons in violation of former G.C. 486-17 and the issue of constitutionality of former G.C. 486-8a (now R.C. 124.11[A][8]), as well as the issue of whether the Chief of the Division of Boiler Inspection was an assistant within the contemplation of G.C. 486-8a.

No similar issues are raised in this case. There is nothing in the record suggesting political motivation with respect to the supplanting of relator with an unclassified employee, and no such issue is raised or contended by appellant. Rather, the issue in this case centers around the tenure rights of appellant, if any.

R.C. 124.34 affords tenure rights to employees in the classified service and provides in part that:

"The tenure of every officer or employee in the classified service of the state * * * holding a position under this chapter of the Revised Code, shall be during good behavior and efficient service and no such officer or employee shall be * * * removed, except as provided in section 124.32 of the Revised Code, and for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office.* * *"

It was the forerunner of R.C. 124.34 (former G.C. 486-17a) that the Supreme Court in *Berning, supra,* expressly held precluded an appointing authority from supplanting a classified employee by a new employee appointed pursuant to the exemption provisions of R.C. 124.11 (A)(8) [then G.C. 486-8a]. No other case has determined the relationship between R.C. 124.34 and 124.11(A)(8). Although

not citing *Berning, supra,* it is correctly stated in 15 Ohio Jurisprudence 3d (1979) 94, Civil Servants and Other Public Officers and Employees, Section 117:

"It seems that a person holding an office or position in the classified service may not be transferred to an office or position in the unclassified service against his will and without the approval of the director of administrative services or the civil service commission or other officer having jurisdiction thereof."

The actions resulting in the "layoff" of relator involved a two-step procedure. First, by letter of February 14, 1983, respondent attempted to change the position of relator as Attorney 2 from a classified to an unclassified position. Then, by letter of March 18, 1983, respondent notified relator that. effective April 3, 1983, he would be laid off from his position "due to the fact that your present position has been exempted to an unclassified position persuant [*sic*] to Section 124.11(A)(8) of the Ohio Revised Code." Appellant was still treated as being in the classified service since he was notified of retention points, "bumping" rights, and the right to appeal to the State Personnel Board of Review.

Apparently, the layoff was attempted pursuant to R.C. 124.321(D), which provides that "[e]mployees may be laid off as a result of abolishment of positions.* * *" Appellee contends that appellant's position was abolished and the report and recommendation of the hearing officer, adopted by the State Personnel Board of Review, treats the position as being abolished. However, the hearing officer's report, adopted by the State Personnel Board of Review, also states:

"To put it bluntly, the 'abolishment' of Appellant's position is a legal fiction. The duties which comprised Appellant's position remain and are performed, in full, by an employee who has replaced Appellant. Normally, an abolishment based upon such a transparent fiction would be disaffirmed as an exercise of bad faith.* * *"

This determination is inconsistent with there being an abolishment of a position pursuant to R.C. 124.321(D), since that section defines "abolishment of position" as follows:

"* * * Abolishment means the permanent deletion of a position or positions from the organization or structure of an appointing authority due to lack of continued need for the position. An appointing authority may abolish positions as a result of a reorganization for the efficient operation of the appointing authority, for reasons of economy, or for lack of work. The determination of the need to abolish positions shall indicate the lack of continued need for positions within an appointing authority.* * *"

Unfortunately, the State Personnel Board of Review did not consider this provision nor R.C. 124.34 but, instead, justified its action by adopting the erroneous conclusion of the hearing officer that:

"In this case, however, Appellee has explicit statutory authority to create an unclassified position. Assuming there are not sufficient duties to create two positions — and nothing in the record indicates there might be — efficiency and economy of the service require that one of the positions not be filled. In this case, if Appellee is to have its unclassified position, Appellant must be laid off."

The findings of the hearing officer tend to indicate that appellant's position was not abolished within the statutory meaning of abolishment. Rather, as the hearing officer expressly found, there was no abolishment but, instead, a supplanting of appellant in a classified position with an unclassified employee, which the Supreme Court in *Berning* expressly held to be improper.

There is, however, one aspect of the hearing officer's finding that is correct,

namely, that the appointing authority has an unqualified right to employ unclassified assistants. R.C. 124.11(A)(8) expressly provides that:

"(A) The unclassified service shall comprise the following positions, which shall not be included in the classified service, and which shall be exempt from all examinations required by this chapter:

"* * *

"(8) * * * two secretaries, assistants, or clerks and one personal stenographer for * * * each of the principal appointive executive officers, * * * authorized to appoint such secretary, assistant, or clerk and stenographer; * * *"

As a concomitant of this right, the appointing authority may determine and assign the duties of his unclassified assistants subject only to the "classification" of the positions by the Director of Administrative Services for pay purposes pursuant to R.C. 124.14(A). Such right of the appointing authority to employ unclassified assistants does not, however, include the power to change a classified position occupied by an incumbent classified employee to an unclassified position without the consent of the employee. To the extent that Ohio Adm. Code 123:1-5-02 and 123:1-5-08 purport to confer such a power, they are inconsistent with the provisions of R.C. Chapter 124 and specifically R.C. 124.321 and 124.34.

Although a new director (appointing authority) assumed office in January 1983, this was not a new office and presumably the prior incumbent of the office had exercised his prerogative under R.C. 124.11(A)(8) of appointing two unclassified assistants. At least, there is nothing in the record indicating that the prior incumbent of the office had not exercised that prerogative.

When a new principal appointive executive officer assumes office, he is entitled to exercise the right to appoint two unclassified assistants and prescribe their duties irrespective of the "classification" of such unclassified assistants during the tenure of the previous incumbent of the office. However, if the newly appointed officer's exercise of this prerogative results in the duties of his unclassified assistants being different from those of the previous incumbent, this is not to be effected by changing to unclassified a classified position occupied by a classified employee with tenure rights and displacing that employee. Rather, if a "reclassification" of the unclassified assistants is necessary because of the needs of the newly appointed officer, he should seek to effect "reclassification" of the unclassified assistant positions pursuant to R.C. 124.14(A).

Assuming that the previous incumbent had chosen not to employ two unclassified assistants, the newly appointed officer has the unqualified right to appoint two unclassified assistants and prescribe their duties and seek to effect "classification" of the unclassified assistant positions for pay purposes pursuant to R.C. 124.14(A). No change of a classified position to an unclassified position nor displacement of a classified employee is necessary for the exercise of the newly appointed officer's right to two unclassified assistants pursuant to R.C. 124.11(A)(8).

In short, there is no necessity for the action taken in this case in order for a newly appointed officer to exercise the prerogatives conferred upon him by R.C. 124.11(A)(8) whether or not the previous incumbent had exercised such prerogatives. Under no circumstance is it necessary for the newly appointed officer to change an occupied classified position to an unclassified position in order for the newly appointed officer to exercise the prerogatives conferred upon him by R.C. 124.11(A)(8). He may exercise this right either by utilizing the unclassified assistant positions under the prior incumbent of the office and

seeking "reclassification" if necessary, or by appointing his unclassified assistants to new positions, prescribing their duties, and seeking classification of the positions pursuant to R.C. 124.14, assuming they do not fit within the classification plan previously established.

There is one circumstance under which a classified position may be changed to an unclassified position. Namely, a position which has been erroneously listed as classified when, in fact, it should be unclassified because the employee is an assistant holding a fiduciary relationship to a principal executive officer. See *State, ex rel. Ryan, v. Kerr* (1932), 126 Ohio St. 26. This circumstance, however, is governed by R.C. 124.11(A)(9) rather than R.C. 124.11(A)(8), which is asserted herein as a basis for displacement of appellant from his position. No contention has been made that the appointing authority was entitled to seek change of appellant's position from classified to unclassified pursuant to R.C. 124.11(A)(9), and thus, such issue is not before us.[2]

Our conclusions herein do not mean that under no circumstance can the exercise of the prerogative granted a principal appointed officer, by R.C. 124.11(A)(8), result in the abolishment of the position of a classified employee. However, this can occur only under a procedure differing from that apparently utilized herein.

If, as a result of the exercise of the prerogative conferred by R.C. 124.11(A)(8), by appointing unclassified assistants, either a lack of work or lack of funds results, the appointing authority may proceed to abolish a position or positions utilizing the procedure of R.C. 124.321 *et seq.* Presumably, no reorganization for the efficient operation of the appointing authority would ordinarily be involved merely for the purpose of exercising the prerogative of R.C. 124.11(A)(8).

In this case, as indicated above, the hearing officer assumed there were insufficient duties to create two positions and that efficiency and economy of the service require one position not to be filled. By making this assumption, the hearing officer placed the burden upon the classified employee to demonstrate that no lack of funds or lack of work was involved. However, R.C. 124.321(D) places that burden upon the appointing authority and requires that the appointing authority "* * * file a statement of rationale and supporting documentation with the director of administrative services prior to sending the notice of abolishment.* * *" We assume that it is this type of necessitated job abolishment that is contemplated by Ohio Adm. Code 123:1-5-02 and 123:1-5-08. However, the first step in this procedure would be the appointment of the unclassified assistants by the appointing authority; the

---

[2] The issue discussed in the dissent was neither raised before nor considered by the board of review. R.C. 124.11(A)(8) does not pertain to an employee where, because of his duties, it is not practicable to determine merit and fitness by competitive examination such as involved in *Ryan*. Rather, R.C. 124.11(A)(9) pertains to such an issue. R.C. 124.11(A)(11) pertains to attorney employees employed as such by the state or political subdivisions. However, no issue has been raised thereunder by appellees possibly because that statute expressly is limited to "assistants to the attorney general." Appellees'

decision not to rely upon appellant's job title of "attorney" may well be predicated upon recognition of the prohibition of R.C. 109.02, which provides that "[t]he attorney general is the chief law officer for the state and all its departments * * *. *No state officer, board, or the head of a department or institution of the state shall employ * * * other counsel or attorneys at law. * * *"* (Emphasis added.) Presumably, appellant's employment was not intended to be in violation of R.C. 109.02. The majority, however, does not determine the legal issue relied upon by the dissent since that issue is not before us.

second step would be the determination of the need for a reduction of the work force; the third step would be a determination of the position or positions to be abolished to fulfill this need; and the last step would be notification to the employee of the job abolishment, all being accomplished within the procedures provided by R.C. 124.321 *et seq.*

Although the hearing officer's report and recommendation touch upon the controlling issue, no factual determination of the controlling issue was made since the hearing officer assumed, without a supporting evidentiary finding, that the job abolishment was occasioned by reason of a lack of work.

Without such a factual determination supported by reliable, probative and substantial evidence, the decision of the State Personnel Board of Review is contrary to law, and to this extent the assignment of error is well-taken.

Accordingly, the assignment of error is sustained and the decision of the Franklin County Court of Common Pleas is reversed and the cause is remanded to that court for the purpose of remanding the cause to the State Personnel Board of Review for further proceedings resulting in a determination of the controlling factual issues involved.

*Judgment reversed
and cause remanded.*

WHITESIDE, J., concurs.

LYNCH, J., concurs in part and dissents in part with opinion.

LYNCH, J., retired, of the Seventh Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.

LYNCH, J., concurring in part and dissenting in part. I concur with the conclusion of the majority opinion that the decision of the Franklin County Court of Common Pleas be reversed and that the case be remanded to that court for the purpose of remanding the case to the State Personnel Board of Review for further proceedings resulting in a determination of the controlling factual issues involved in this case.

I agree with most of the reasoning in the majority opinion which, in my opinion, is a comprehensive discussion of the pertinent law applicable to this case. However, I specifically dissent from its holding that in every case that a person holding an office or position in the classified service may not be replaced by an unclassified employee against his will pursuant to R.C. 124.11(A)(8), and that the only way to accomplish this, under the facts of the instant case, is to reclassify such position pursuant to R.C. Chapter 124. In my opinion, the first holding of the majority opinion would depend on the duties that such classified employee held at the time that he or she was requested to be replaced pursuant to R.C. 124.11(A)(8).

The majority opinion bases its decision on *State, ex rel. Townsend,* v. *Berning* (1939), 135 Ohio St. 31 [13 O.O. 318], which concerned the removal of a tax clerk who had been duly appointed and had tenure in the competitive classified civil service, pursuant to the exemption provision in R.C. 124.11(A)(8). In that case, the court stated that the duties of a tax clerk were of a routine, clerical nature and that there were tax clerks in the same office in the classified service performing duties similar to those performed by subject tax clerk.

The only information in the record as to Esselburne's duties is that the title of his position is Attorney 2 and that he reported to the deputy director and chief counsel of the Ohio Department of Agriculture. A logical inference from the title "Attorney 2" is that appellant was doing legal work for the Ohio Department of Agriculture.

Among the employees who are prop-

erly regarded as "assistants" pursuant to R.C. 124.11(A)(8) are assistant law directors. *State, ex rel. Ryan,* v. *Kerr* (1932), 42 Ohio App. 19, affirmed (1932), 126 Ohio St. 26; 14 Ohio Jurisprudence 3d (1979) 620, Civil Servants and Other Public Officers and Employees, Section 31.

Assistant law directors are included under the provisions of R.C. 124.11 (A)(11). However, the provisions of the Cleveland City Charter did not contain any express provisions placing assistant law directors in the unclassified service such as is done by R.C. 124.11(A)(11) and the issue in the *Ryan* case was whether assistant law directors of the city of Cleveland were included in the classified service under the provisions of the Cleveland City Charter. Many of the facts of the *Ryan* case can be distinguished from the facts of instant case, but I submit that the *Ryan* case is the only case that is pertinent to the status of an attorney as a civil service employee as compared to other civil service employees.

In the *Ryan* case, the court pointed out that attorneys are required to take bar examinations by the Supreme Court of Ohio before they can practice law in Ohio and stated that they could see no purpose in requiring assistant law directors to undergo a civil service examination to establish their legal qualifications.

The court of appeals in the *Ryan* case stated at 28, in pertinent part:

"We conclude that the position of assistant law director is of such confidential relation and the duties imposed upon him are of such importance that it is in the interest of the public welfare that the appointing power, to wit, the law director, shall exercise such disciplinary supervision as he deems necessary. * * *"

It is the law of Ohio that no person shall be permitted to practice as an attorney unless he has been admitted to the bar by order of the Ohio Supreme Court. R.C. 4705.01. It is a matter of general knowledge that the Ohio Supreme Court requires a graduate of a law school to pass an examination before he or she will be permitted to practice law.

In my opinion, the duties of an attorney do not fit in the general understanding of the word "routine" as applied to civil service employees. Furthermore, there is no evidence in the record of the instant case that there are other "Attorney 2" employees in the classified service of the Ohio Department of Agriculture that are performing duties similar to those performed by Esselburne. In my opinion, the facts in the instant case can be distinguished from the facts of the *Berning* case.

In my opinion, the position of "Attorney 2" probably comes within the provision of "assistants" pursuant to R.C. 124.11(A)(8).