ESSELBURNE, APPELLEE, *v.* OHIO DEPARTMENT OF AGRICULTURE, APPELLANT; STATE PERSONNEL BOARD OF REVIEW.

(No. 87AP-767—Decided
August 25, 1988.)

*Michael J. Morrissey* and *Douglas W. Bulson, Jr.,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *John C. Albert* and *William Scott Lavelle,* for appellant.

STRAUSBAUGH, J. This is an appeal by appellant from a judgment of the court of common pleas reversing an order of the State Personnel Board of Review. That order had affirmed the abolishment and layoff of appellee by appellant.

It is from that judgment that appellant now appeals and sets forth the following two assignments of error:

"I. The decision of the board which found a lack of work was supported by reliable, substantial and probative evidence and the lower court erred in not so finding.

"II. The board's application of this court's interpretation of R.C. 124.11(A)(8) was in accordance with law and the lower court erred in not so finding."

Appellant, Ohio Department of Agriculture, employed appellee, Peter C. Esselburne, as an Attorney 2 for approximately three years beginning in January 1980. This position was treated by appellant as though it were included in the classified service. When appellant's new director took office in January 1983, he undertook to exempt appellee's position from the classified service pursuant to R.C. 124.11(A)(8). Appellant then informed appellee that he was being laid off because his position had been changed from the classified to the unclassified service.

Appellee appealed his layoff to the State Personnel Board of Review ("board"), which appeal was heard on June 1, 1983, before a referee of the board. The referee concluded that since R.C. 124.11(A)(8) authorized appellant to create an unclassified position and since the creation of that position gave rise to a presumption that there were not sufficient duties for both positions, appellant was justified in laying appellee off. The board adopted the recommendation of the referee and affirmed the layoff.

Subsequently, appellee perfected an appeal to the Franklin County Court of Common Pleas, which affirmed the layoff. An appeal was then taken by appellee from that judgment to this court. We reversed. *Esselburne v. Ohio Dept. of Agriculture* (1985), 29 Ohio App. 3d 152, 29 OBR 180, 504 N.E. 2d 434 (*"Esselburne I"*).

We remanded the cause to the court of common pleas for the purpose of sending the appeal back to the board for further proceedings.

We noted that there was no necessity for appellant to change an occupied classified position to an unclassified position in order to exercise the prerogatives conferred by R.C. 124.11(A)(8). *Id.* at 159-160, 29 OBR at

188, 504 N.E. 2d at 442. This court suggested a procedure, however, by which the exercise of an appointment under R.C. 124.11(A)(8) could result in the abolishment of an occupied classified position:

"[T]he first step in this procedure would be the appointment of the unclassified assistants by the appointing authority; the second step would be the determination of the need for a reduction of the work force; the third step would be a determination of the position or positions to be abolished to fulfill this need; and the last step would be notification to the employee of the job abolishment, all being accomplished within the procedures provided by R.C. 124.321 *et seq."Id.* at 160-161, 29 OBR at 189, 504 N.E. 2d at 443.

We found that the board incorrectly assumed either that there were insufficient duties to create two positions or that efficiency and economy of service required only one position. *Id.* at 160, 29 OBR at 188-189, 504 N.E. 2d at 442-443. The board improperly placed upon appellee the burden of demonstrating that no lack of work or of funds existed. *Id.*

Upon remand, the matter was heard before a referee of the board on January 3, 1986. The referee found that appellant desired to change the duties of appellee to effect a more regulatory posture of the agency. As such, appellant decided to have the position placed in the unclassified service and also determined that appellee would not be retained in that unclassified position because of the change in the nature of appellee's duties. Appellant then requested that the Attorney 2 position and two others be exempted from the classified service. Appellee was then laid off, his position was changed to the unclassified service, and two new employees were hired to perform the duties of the new positions. The referee further found that appellant had established a lack of work for the positions so as to justify the layoff of appellee after the creation of the unclassified Attorney 2 positions. The referee then concluded, based on this court's decision in *Esselburne I,* that appellant had established by a preponderance of the evidence that appellee's position was properly abolished and appellee was properly laid off due to lack of work. The referee further concluded that although appellant failed to follow this court's suggested procedure for effecting a layoff via a change from the classified to the unclassified service, such failure was not fatal to the layoff. The referee reasoned that because appellant had complied with all of the procedural steps, albeit not in the exact order prescribed by this court, the layoff was proper.

The report and recommendation of the referee was ultimately affirmed by the board on February 18, 1986. Appellee then appealed once again to the Franklin County Court of Common Pleas, which reversed the order of the board. The common pleas court found that no new evidence was adduced sufficient to allow the removal by appellant of appellee from the classified to the unclassified service. The trial court concluded that there was no reliable, probative, or substantial evidence to suggest that appellee was not doing a competent job, that economic reasons required his dismissal, or that appellee did not have work to do. We affirm.

Since appellant's assignments of error raise essentially the same issue, both will be considered together. It is appellant's position that the common pleas court erroneously applied this court's prior opinion in interpreting R.C. 124.11(A)(8). Appellant maintains that the board specifically applied this court's mandate and took new evidence on remand. Based upon this in-

formation, the board found that appellant had reviewed the duties performed by appellee and compared these duties to the duties the unclassified attorney would undertake; the director then concluded that there was not enough work for two positions; that he notified the Department of Administrative Services of his decision to utilize R.C. 124.11(A)(8); that he then properly laid off appellee; and that he subsequently hired an attorney to fill the newly created unclassified Attorney 2 position. Appellant argues that this court did not mandate that the appointing authority appoint the new unclassified employee and maintain the current classified employee for such time as to result in inefficiency, unnecessary expenses, or budgetary losses. Rather, as the board found, appellant expedited this process through a single series of events rather than maintain a classified attorney position and an unclassified attorney position for an unnecessary length of time. Thus, appellant argues that it properly complied with this court's previous order.

Contrary to appellee's contentions, this court did remand this cause for further proceedings before the board, including the taking of additional evidence. Unfortunately, appellant's evidence indicates that it failed to follow the procedure we outlined in *Essenburne I*. Specifically, the referee concluded:

"The testimony from Director Locker was that shortly after he became Director, he reviewed the work done by [appellee] in his Attorney 2 position. After that review, and after considering the duties which the Director wanted the unclassified Attorney 2 to undertake, the Director concluded that there was not sufficient work for two Attorney 2s on the staff of the Department of Agriculture. He then notified the Department of Admin-istrative Services of his decision to utilize Revised Code Section 124.11(A)(8), followed the Department of Administrative Services' instructions on procedures, laid off [appellee], and *then* hired an attorney to fill the newly created unclassified Attorney 2 position.

"This determination follows the Court's suggested scenario in *Esselburne [I]*. The only thing which Director Locker did not do was hire the unclassified employee in the Attorney 2 position first, take away all of [appellee's] duties and give them to the unclassified Attorney 2, wait a number of days, weeks, or months, thereafter determine that there was not enough work for both Attorney 2s, and abolish [appellee's] position. The result anticipated by the Court and as realized by the Director in this case were exactly the same." (Emphasis *sic*.)

This evidence indicates that appellant's decision to abolish the Attorney 2 position was premised upon the prospect that there would not be enough work for appellee in the future, rather than upon a present lack of work. Prospective lack of work alone is an insufficient premise for abolishing a position pursuant to R.C. 124.321(D).

That section, which governs layoffs as a result of the abolishment of a position provides, in part:

"* * * Abolishment means the permanent deletion of a position or positions from the organization or structure of an appointing authority due to lack of continued need for the position. An appointing authority may abolish positions as a result of a reorganization * * * for lack of work. The determination of the need to abolish positions shall indicate the lack of continued need for positions within an appointing authority. Appointing authorities shall themselves determine whether any position should be abolished and shall file a statement of rationale and sup-

porting documentation with the director of administrative services prior to sending the notice of abolishment. * * *"

The burden is on the appointing authority to demonstrate a lack of work, which, for the purpose of abolishing the position, must be expected to last more than twelve months. Ohio Adm. Code 124-7-01 (A)(1).[1] This burden may be met where the appointing authority provides a "comparison between *current work levels and work levels when a lack of work did not exist,* which may include statistical data and additional supporting materials." (Emphasis added.) Ohio Adm. Code 123:1-41-02(B). Given these statutory and regulatory directives, a finding which supports the appointing authority's determination that a lack of work exists must be premised upon evidence concerning the classified employee's work levels before and after the appointment made pursuant to R.C. 124.11(A)(8). Compare *Bispeck* v. *Bd. of Commrs. of Trumbull Cty.* (1988), 37 Ohio St. 3d 26, 30-31, 523 N.E. 2d 502, 507.

Here, because appellant did not appoint his unclassified assistant until subsequent to appellee's removal, there could be no finding that the work level for an Attorney 2 had decreased after the appointment. Thus, the order of the board was not supported by reliable, probative and substantial evidence. Appellant may not abolish appellee's classified position because of a prospective lack of work alone. The two assignments or error are overruled.

Parenthetically, we also address the question posed by the referee regarding the propriety of the procedure outlined by this court in *Esselburne I.* Specifically, the referee expressed concern over a procedure whereby an appointing authority exercises its prerogative under R.C. 124.11(A)(8), assigns to this unclassified employee the duties previously performed by a classified employee, and then lays off the classified employee by abolishing the position pursuant to R.C. 124.321(D).

Clearly, such a procedure was not countenanced by this court in *Esselburne I.* As we have previously made clear, a position is abolished only when the position is permanently deleted from the organization or structure of the appointing authority. *Griffith* v. *Dept. of Youth Services* (1985), 28 Ohio App. 3d 76, 77, 28 OBR 117, 119, 502 N.E. 2d 239, 241. Abolishment may not be accomplished simply by transferring the duties of a classified employee to that of an unclassified employee, since the position is not abolished. See *Esselburne I, supra,* at 158, 29 OBR at 187, 504 N.E. 2d at 441.

The procedure we outlined in *Esselburne I* contemplated the abolishment of appellee's position, not merely the transfer of his duties to an unclassified employee appointed pursuant to R.C. 124.11(A)(8). The premise for this court's suggested procedure was our recognition that the appointment of unclassified employees pursuant to R.C. 124.11(A)(8) *might* result in decreased work loads for classified employees because of an overlap of duties. This is not to suggest that the appointing authority may simply transfer the duties of a classified employee to an unclassified employee; rather, the unclassified employee may

---

[1] The predecessor to Ohio Adm. Code 124-7-01(A)(1) was Ohio Adm. Code 124-7-02. That section merely incorporates the rules contained in Ohio Adm. Code 123:1-41-01 *et seq.* regarding layoffs. Ohio Adm. Code 123:1-41-04(A) stated the rule now codified in Ohio Adm. Code 124-7-01 (A)(1).

perform duties which are different from the specific duties of the classified employee but nevertheless encompass certain of the latter's duties. Such procedure, of course, contemplates the appointment of the unclassified employee for a sufficient period of time by which to assess the pre- and post-appointment work load of the classified employee.

Having overruled appellant's assignments of error, the judgment of the court of common pleas is affirmed in all respects. The common pleas court is instructed to direct the board to disaffirm the abolishment of appellee's position and his layoff. Appellee is entitled to resume his former position with appellant as an Attorney 2.

*Judgment affirmed and cause remanded with instructions.*

McCORMAC and BOWMAN, JJ., concur.