SWEPSTON, Appellant,

v.

BOARD OF TAX APPEALS OF OHIO, Appellee.

[Cite as *Swepston v. Bd. of Tax Appeals of Ohio* (1993), 89 Ohio App.3d 629.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–129.

Decided July 27, 1993.

630

*Rishel, Myers & Kopech* and *Marc E. Myers,* for appellant.

*Lee Fisher,* Attorney General, and *Elizabeth J. Birch,* Assistant Attorney General, for appellee.

PETREE, Judge.

This is an administrative appeal from a judgment of the Franklin County Court of Common Pleas that affirmed the order of the State Personnel Board of Review approving the abolishment of appellant Barry Swepston's classified civil service position as a Fiscal Officer 2 with appellee, the Board of Tax Appeals of Ohio. Appellant asserts two assignments of error as follows:

"I.  The court of common pleas erred when it found that the order of the State Personnel Board of Review was supported by reliable, probative and substantial evidence and was in accordance with law.

"II.  The court of common pleas erred when it failed to conclude that appellant's position had not been abolished, either in fact or in law."

Appellant's assignments of error essentially present the issue of whether the court of common pleas abused its discretion in affirming the personnel board's decision to allow appellant's job abolishment to stand.  Because we find that there was no evidence in the record to establish the good faith of the appointing authority in connection with the job abolishment in question, we reverse.

The Board of Tax Appeals informed appellant by letter dated August 9, 1991 that his position as a certified Fiscal Officer 2 was abolished, effective September 3, 1991.  He had worked at the board as a fiscal employee since 1975 and served in the Fiscal Officer 2 position since 1988.  However, Sue Pohler, the new Executive Director and Secretary to the board, conducted a job audit of all board personnel in June 1991 and concluded that a staff reorganization should take place so the board could better deal with its large docket of over two thousand cases.  The then-average time for disposition of a case by decision at the board was two years.  Some cases were six years. old.  Despite the backlog, however, Pohler found that the board had an excessive number of administrative positions for an agency whose chief function was writing legal opinions on state tax issues. Specifically, the board had fourteen administrative support staff positions for the

entire twenty-five member agency. Hence, Pohler proposed that several of the administrative positions be abolished and that a number of legal interns be hired for the attorneys at the board, who had no support and did all of the legal research on the cases they authored.

Though Pohler did not commit her reorganization to writing, it is undisputed that a majority of the board accepted it as it was presented to them. She laid off appellant from his Fiscal Officer 2 position, laid off a classified administrative secretary, and laid off John Gillivan, who served as an allegedly unclassified fiduciary Administrative Assistant 4. Two part-time legal interns and two part-time law clerks were then hired. The official rationale that Pohler wrote and submitted to the Department of Administrative Services to justify the layoffs stated that the purpose of the abolishment of appellant's Fiscal Officer 2 position was "for the efficient operations of the Board of Tax Appeals, not due to a lack of funds."

Pohler's testimony before the State Personnel Board of Review further explained her elimination of appellant's position. She said that the Board of Tax Appeals simply did not need two persons performing fiscal duties at such a small state agency. She said that both appellant and John Gillivan were performing similar duties when one person could do both jobs. Hence, she decided to consolidate or merge the positions into one new unclassified position titled "Business Administrator 2." She hired Julie Snow to start this job on September 15, 1991.

Pohler characterized her understanding of appellant's duties as a Fiscal Officer 2 as follows. She said appellant did all of the day-to-day purchasing of inventory, the payroll, gave forms to new employees, did the "back up" figures for the yearly budget, prepared purchase vouchers and mailed out the warrants. He also was in charge of petty cash and the $14,000 rotary fund from filing. In addition, he met the equipment needs of the board, such as purchasing calculators, keeping warranties, and having copiers repaired.

Pohler contended that Gillivan really duplicated appellant's duties. She said that, in addition to spending some of his time travelling around the state to maintain relations with the county auditors, Gillivan essentially supervised and approved all of appellant's fiscal decisions. He would thus sign off on the larger purchases and the budget figures that appellant prepared. She felt that Gillivan was also responsible for fiscal policy at the board. She characterized appellant as only doing the "grunt" work on fiscal matters.

Pohler said that all of these fiscal duties are now handled by Julie Snow, the new unclassified Business Administrator 2. In addition to performing all of the fiscal duties of both appellant and Gillivan, Pohler said the new position also required Snow to perform certain personnel recruiting duties. This consisted of

doing all of the board's recruiting, maintaining personnel files on applicants, and doing all of the prescreening interviews. Pohler said that the board had not previously had anyone doing such centralized recruiting tasks. She said that the only personnel matter that appellant did was placing an ad for a board employee who needed to hire someone.

Pohler said that as a result of the layoffs and hiring, everything is getting done at the board, the payroll is being met, deadlines are being met, and the board now has a centralized personnel system. She said that with the addition of legal interns, the number of decisions actually finalized by the board has increased by seven percent. Moreover, the board has also increased the number of legal opinions rendered by fifty-eight percent.

On cross-examination, Pohler admitted that she did not view appellant's termination as a lack of funds problem under the code. She also admitted that she increased the salaries on the board for other employees on the same day she fired appellant. She admitted as well that she did not justify appellant's layoff on the basis of a lack of work because everything that appellant did is still being done at the board.

Julie Snow similarly testified that the major part of her job consisted of fiscal duties. In the four months that she had been at the board, she interviewed for three positions. While she did not want to characterize this as taking up a "small" portion of her time, she did admit that her fiscal duties took up the "bulk" of her time. She said that she had not worked for the state for ten years but did have twelve years of unrelated service from 1969 until 1981.

Randall Sweeney, Vice Chairman of the Board of Tax Appeals, testified that he voted against abolishing appellant's position. He said he did not approve of Pohler's reorganization because she was laying off two experienced board employees. Sweeney, who had previously been chairman of the board, testified that appellant had always performed the fiscal duties at the board. But when the Auditor of State audited the agency in 1989 and suggested that some form of double checking be done to verify the agency's fiscal figures, the board hired John Gillivan, who had previously worked for the board on a short-term basis, to help computerize its operations. Sweeney characterized Gillivan's fiscal duties as simply verifying the work, for proper accounting purposes, that had always been done by appellant.

Appellant testified as well that Gillivan assumed only a small part of his duties when he came on in 1989. He said Gillivan just reviewed his work and forwarded it to the board for consideration. He also said that he had some personnel duties at the board, including the issuance and collection of various personnel leave forms.

Given this evidence, a State Personnel Board of Review hearing examiner found that the abolishment of appellant's position was unlawful because the duties of appellant's classified position were simply transferred to a new unclassified person with a new title. The hearing examiner said that merely adding the recruiting function to the list of job duties for the new unclassified position did not change the unlawful nature of the job transfer in question. However, the State Personnel Board of Review, by a two-to-one vote, rejected the hearing examiner's conclusions, reasoning that the vast majority of fiscal duties performed by the new Business Administrator 2 were part of John Gillivan's unclassified Administrative Assistant 4 position, not appellant's Fiscal Officer 2 position. On appeal, the common pleas court found that there was substantial, reliable, and probative evidence to support this determination.

Section 10, Article XV of the Ohio Constitution establishes the civil service system in Ohio, stating that "[a]ppointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision." Pursuant to this constitutional mandate and the corresponding civil service statutes, it has been firmly established that a classified employee in the state has a right to retain his classified position unless removed as provided by statute. *State ex rel. Townsend v. Berning* (1939), 135 Ohio St. 31, 13 O.O. 318, 19 N.E.2d 155. However, it has also long been recognized that the power to create a position includes the power to abolish it, particularly for purposes of economy and efficiency. *State ex rel. Miller v. Ohio Dept. of Indus. Relations* (1926), 114 Ohio St. 122, 123, 150 N.E. 431, 431; *Durbin v. Schneider* (1964), 120 Ohio App. 366, 367, 29 O.O.2d 209, 209, 202 N.E.2d 427, 428.

Civil service layoffs through job abolishment are governed today by R.C. 124.321(D), which provides in pertinent part:

"Employees may be laid off as a result of abolishment of positions. Abolishment means the permanent deletion of a position or positions from the organization or structure of an appointing authority due to a lack of continued need for the position. An appointing authority may abolish positions as a result of a reorganization for the efficient operation of the appointing authority, for reasons of economy, or for lack of work. The determination of the need to abolish positions shall indicate the lack of continued need for positions within the appointing authority. Appointing authorities shall themselves determine whether any position should be abolished and shall file a statement of rationale and supporting documentation with the director of administrative services prior to sending notice of abolishment. If an abolishment results in a reduction of the

work force, the appointing authority shall follow the procedures for laying off employees, subject to the following modifications:

"(1) The employee whose position has been abolished shall have the right to fill an available vacancy within the employee's classification."

In interpreting this provision, the Supreme Court of Ohio recognized in *Bispeck v. Bd. of Commrs. of Trumbull Cty.* (1988), 37 Ohio St.3d 26, 30, 523 N.E.2d 502, 506, that "[t]he [personnel] board's authority [to disaffirm a job abolishment] extends to determining whether the abolishment was arbitrary, unreasonable, or unlawful and whether the abolishment was proper and necessary." In this respect, Ohio Adm.Code 124–7–01(A) states the familiar rule that a job abolishment may be disaffirmed by the board if it was made in bad faith.[1] "Bad faith may be established by showing appropriate evidence or inferences therefrom that the job abolishments were not made in good faith and were used as a subterfuge to subvert the civil service system." *State ex rel. Gould v. Ohio Bur. of Emp. Serv.* (1985), 28 Ohio App.3d 30, 32, 28 OBR 40, 42, 501 N.E.2d 648, 650.[2] On this score, the employee has the burden of proof to demonstrate the appointing authority's bad faith. *Id.*

In *Blinn v. Ohio Bur. of Emp. Serv.* (1985), 29 Ohio App.3d 77, 29 OBR 88, 502 N.E.2d 665, this court rejected the narrow view that bad faith can only exist where there is a demonstrated personal or political animus for the discharged civil servant. We recognized the broader job protection offered by the civil service laws as follows:

" * * * Where the intent and consequence of the employer's method is to subvert the civil service system to allow the selection of handpicked employees to fill jobs that should have been available to civil service workers based upon seniority and retention points, bad faith has been shown. * * * " *Id.* at 80, 29 OBR at 91, 502 N.E.2d at 668.

It thus has been held that the right of the appointing authority to employ unclassified assistants does not include the power, without the consent of the classified employee, to merely change a classified position occupied by an

---

1. Ohio Adm.Code 124–7–01(A) provides in pertinent part:

   "Job abolishments and layoffs shall be disaffirmed if the action is taken in bad faith. The employee must prove the appointing authority's bad faith by a preponderance of the evidence.

   "(1) Appointing authorities shall demonstrate by a preponderance of the evidence that a job abolishment was undertaken due to the lack of continuing need for the position, a reorganization for the efficient operation of the appointing authority, for reasons of economy or for a lack of work expected to last more than twelve months."

2. See, generally, Annotation, Determination as to Good Faith in Abolition of Public Office or Employment Subject to Civil Service or Merit System (1978), 87 A.L.R.3d 1165.

incumbent employee to an unclassified position. *Esselburne v. Ohio Dept. of Agriculture* (1985), 29 Ohio App.3d 152, 29 OBR 180, 504 N.E.2d 434. While a proper job abolishment may occur pursuant to a merger of positions where a reorganization has taken place for reasons of efficiency and economy, *Weston v. Ferguson* (1983), 8 Ohio St.3d 52, 8 OBR 523, 457 N.E.2d 818, "[a] job is not abolished under circumstances where the appointing authority simply transfers that job's duties to a new employee to perform." *In re Appeal of Woods* (1982), 7 Ohio App.3d 226, 228, 7 OBR 288, 290, 455 N.E.2d 13, 15, citing *State ex rel. Stine v. McCaw* (1940), 137 Ohio St. 13, 17 O.O. 303, 27 N.E.2d 488; *Esselburne v. Ohio Dept. of Agriculture* (1988), 49 Ohio App.3d 37, 41, 550 N.E.2d 512, 516. "Clearly, R.C. 124.321(D) only contemplates the actual abolishment—the complete eradication—of a position. * * * R.C. 124.321(D) does not allow a particular person to be fired or laid off from a position while leaving that position intact for another person to fill." *Griffith v. Ohio Dept. of Youth Serv.* (1985), 28 Ohio App.3d 76, 77, 28 OBR 117, 119, 502 N.E.2d 239, 240–241; *In re Appeal of Moreo* (1983), 13 Ohio App.3d 22, 25, 13 OBR 24, 27, 468 N.E.2d 85, 88. Manifestly, under R.C. 124.321(D), a civil servant's *position* may be abolished but the civil servant's *employment* is protected.

■ The evidence in the record demonstrates that all of appellant's Fiscal Officer 2 duties along with all of the fiscal duties of John Gillivan's Administrative Assistant 4 position were shouldered by the new unclassified employee, Julie Snow, as the board's Business Administrator 2. This unclassified position also entailed new recruiting duties, which appellant performed only on a limited basis in the past. However, Snow did not testify that she was actually doing a lot of interviewing since taking her new job. The majority or bulk of her duties actually consisted of the duties previously performed by appellant. The State Personnel Board of Review viewed Snow as primarily performing John Gillivan's unclassified tasks but there is no evidence in the record to establish or substantiate this view. The hearing examiner, who viewed the witnesses, rejected Sue Pohler's testimony that Gillivan was more than just a person added for agency accounting purposes.

■ Hence, the Board of Tax Appeals abolished one classified and one allegedly fiduciary position and hired a new unclassified employee to perform the duties of both of the "abolished" jobs. Since it is unlawful to fire one classified employee and merely transfer the civil servant's job duties to a new unclassified employee, it should be readily apparent that it is equally unlawful to simply double the terminations of employees and hire a new unclassified employee to perform all of the job duties just the same. While the Board of Tax Appeals made the logical argument that abolishing excess administrative staff would result in savings and efficiency, this was negated by the fact that appellant was

not given the chance to fill the new, "more efficient" position contemplated by the reorganization. In other words, instead of abolishing just one of the fiscal positions targeted by the Board of Tax Appeals and making the remaining employee perform the necessary duties, the board fired *both* of the workers here and hired someone new. This raises the obvious inference that the abolishment of appellant's position was accomplished to subvert his civil service rights. *In re Appeal of Woods, supra* (abolishment of two classified houseparent positions working separate shifts at mental health center was unlawful where not even one of the classified workers was given opportunity to work as a full-time live-in houseparent). Moreover, there was no evidence presented that appellant, who essentially performed Gillivan's fiscal duties prior to Gillivan's coming to the board in 1989, could not perform the personnel duties taken on by the new Business Administrator 2, Julie Snow.

While there was no suggestion of personal or political animus against appellant in this case, it is clear that in any event a job abolishment cannot be undertaken simply because appellant is a long-time employee with high seniority and a higher salary than that which would be paid to a new hire. *Blinn, supra.* As Sue Pohler admitted, this is not a "lack of funds" case. Indeed, the difference between appellant's Fiscal Officer 2 salary and the new Business Administrator 2 salary is about $8,000 per year. The combined salaries of the two new part-time legal interns and the two new part-time legal assistants were $52,700. The Board of Tax Appeals, then, fired a career civil servant with seventeen years of unbroken experience in state fiscal matters at the board itself to save $8,000 a year and hire a brand new employee with no state fiscal experience, let alone with the board. The $8,000 "savings" would not even cover one of the salaries of the new part-time legal assistants, who were added to increase the output of opinions. We must find that the abolishment of appellant's civil service position was merely a subterfuge that cannot be sustained. See *State ex rel. Miller v. Ohio Dept. of Indus. Relations, supra* ("abolishment" of office manager's position for stated purposes of economy was improper where his position remained intact and was performed by a new person with a different title who merely earned a reduced salary).

There was no substantial, reliable and probative evidence to establish that the abolishment of appellant's position was done for reasons of efficiency and economy pursuant to a legitimate reorganization. On the contrary, there was substantial, reliable and probative evidence to demonstrate that the abolishment of appellant's position was done in bad faith. Accordingly, the trial court abused its discretion in affirming the order of the personnel board.

Therefore, the assignments of error are sustained to the extent that the order of the State Personnel Board of Review was not supported by reliable, substantial

and probative evidence when it affirmed the action of the appointing authority in abolishing appellant's job. Pursuant to *In re Appeal of Woods, supra,* the judgment of the court of common pleas is reversed, and the cause is remanded to that court with instructions to vacate its previous order and to enter a new order vacating the order of the State Personnel Board of Review and remanding the case to the State Personnel Board of Review, directing it to disaffirm appellant's layoff and to conduct an evidentiary hearing to determine whether appellant was willing and prepared to accept the changed position, and in the event that the evidence supports the conclusion that he was so willing and prepared, to then reinstate appellant's employment, effective September 3, 1991.

*Judgment reversed*
*and cause remanded*
*with instructions.*

DESHLER and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.