BLINN ET AL., APPELLEES, *v.* OHIO BUREAU OF EMPLOYMENT SERVICES, APPELLANT.
KRAMER ET AL., APPELLEES, *v.* OHIO BUREAU OF EMPLOYMENT SERVICES, APPELLANT.
WEISER, APPELLEE, *v.* OHIO BUREAU OF EMPLOYMENT SERVICES, APPELLANT.

(Nos. 85AP-342, -348 and -349 — Decided October 3, 1985.)

*Froehlich & Drossman* and *Lois M. Drossman; Marc E. Myers;* and *John J. Gideon,* for appellees.

*Anthony J. Celebrezze, Jr.,* attorney general; *Knepper, White, Arter & Hadden, Richard P. Fahey* and *Lise K. Jacobson,* for appellant.

McCORMAC, J. Appellees in these consolidated cases were classified civil service employees who were employed by the Ohio Bureau of Employment Services ("OBES") to implement the federal Comprehensive Employment Training Act ("CETA") in Ohio. Their jobs were abolished when the CETA program was terminated and replaced by the Job Training Partnership Act ("JTPA").

Appellees appealed their job abolishments to the State Personnel Board of Review ("board"). The appeals were heard by a hearing examiner who found that OBES had acted in bad faith in abolishing appellees' jobs while transferring handpicked co-workers in CETA to the new JTPA program. The hearing examiner recommended to the board that the abolishments be disaffirmed, pursuant to Ohio Adm. Code 124-7-01(A),[1] based upon this finding of bad faith.

The board, by a two-to-one decision, rejected the recommendation of the hearing examiner and affirmed the abolishment of appellees' positions.

Appellees filed three separate appeals of the board's decision to the Franklin County Court of Common Pleas, which appeals were consolidated. The common pleas court reversed the decision of the board, finding that it was not supported by reliable, probative, and substantial evidence on the basis that the hearing officer was the finder of fact who actually observed the witnesses and was in the best position to decide whether there was bad faith on the part of OBES.

OBES has appealed, asserting the following assignments of error:

"1. As a matter of law, the court below erred when it failed to give deference to the board's interpretation of its own rules which govern job abolishments taken in bad faith and which require appellants-appellees to prove bad faith.

"2. The court below erred in substituting its own judgment for the board's when the board's order was supported by the requisite reliable, probative and substantial evidence."

Previously, the motion of appellees to dismiss these appeals, based upon the argument that OBES was barred from appealing the judgment of the common pleas court under R.C. 119.12 because the judgment did not involve questions

---

[1] Ohio Adm. Code 124-7-01(A) states:

"Job abolishments shall be disaffirmed if the action is taken in bad faith."

of law relating to the constitutionality, construction, or interpretation of the statutes and rules of the agency, was overruled on the basis that the appeal arguably involved a question of law relating to the construction of R.C. 119.09 and, in particular, the authority of the board to make its own findings of fact *de novo* from the testimony and evidence without being controlled by the findings of its hearing examiners.

The hearing examiner found that OBES was guilty of bad faith, pointing to evidence which the hearing examiner stated clearly showed that OBES made transfers, promotions, and lateral transfers to move selected personnel to safe positions before the job abolishments were effected, and that, because of this handpicking of employees, there was bad faith. The hearing examiner acknowledged that the burden was on the employees to prove bad faith by a preponderance of the evidence, with the employer entitled to a presumption that the job abolishments were in good faith. Nevertheless, the examiner found that, even applying that burden, bad faith had been proved because of the handpicking of the employees to fill positions that were basically the same in JTPA as in CETA.

Specifically, the hearing examiner stated:

"Based upon the testimony of Appellees' witnesses and the exhibits, I find that prior to the effective date of the layoff, but after the appointing authority had actual knowledge of the retention points of the various employees, the appoint[ing] authority transferred selected employees out of the CETA program to the Executive General category. The effect of these movements will be addressed in the section on bad faith.

"* * *

"Based upon the testimony and the exhibits presented on this component, I find that OBES created job classifica-tions for staffing JTPA which differed in name only from pre-existing CETA job classifications.* * *

"* * *

"The testimony as a whole and the many exhibits introduced in this case show that OBES made transfers, promotions, and lateral movements to place selected personnel in safe positions before the job abolishments were effective. These movements were made despite the fact that the Executive General employees had (in many cases) less retention points than their co-workers in CETA. It also had the effect of defeating the re-employment rights of laid off workers to recall to jobs of same or similar duties within JTPA.

"There is no credible evidence presented in this case which would indicate that the appointing authority, or any of its management employees, held any strong personal animus toward any of the Appellants. No one at OBES was out to 'get' any of the Appellants by making them lose their jobs. However, bad faith does not rest on personal animus alone.

"Based upon the evidence, and especially upon the evidence presented through the testimony of Douglas Ball, Joan Hammond and the personnel actions from DAS [Department of Administrative Services], I find that the appointing authority acted in bad faith in its attempt to avoid the effects of civil service laws and staff JTPA with hand-picked classified employees."

The board, by a two-to-one decision, rejected the recommendations of its hearing examiner and affirmed the abolishment of the jobs of the employees. The board stated that bad faith was not established because there was no evidence of political or personal animus, that all procedural laws and rules concerning the abolishment of civil service positions had been followed, and that no CETA employee was moved into or out of the effective classifications after OBES had submitted retention points to

DAS. However, the board did not specifically address the hearing examiner's factual finding that the JTPA employees were handpicked, rather than selected by retention points and seniority through the civil service system, to subvert the system, which was the crux of the hearing examiner's opinion that there was bad faith.

In *State, ex rel. Gould,* v. *Bur. of Emp. Serv.* (1985), 28 Ohio App. 3d 30, we decided a mandamus action regarding similarly situated CETA employees whose jobs were abolished as a result of the same action herein. In those cases, the board had adopted the report of one of its hearing officers finding that there was bad faith in the abolishment of the CETA employees' jobs. When OBES refused to comply with the board's order of reinstatement, we granted a writ of mandamus requiring them to do so. We held that bad faith may be established by showing appropriate evidence or inferences therefrom, that the job abolishments were not made in good faith and were used as a subterfuge to subvert the civil service system. We also held that the fact that handpicked employees retained their positions through transfer to a division called "Executive General" while less-favored employees had their jobs abolished, even if for non-political or impersonal reasons, constituted evidence of subversion of the civil service system to avoid application of the seniority system based upon retention points. The handpicked employees retained their seniority by the employer's certification that they were performing at least fifty percent (and possibly one hundred percent) of the same duties before their transfer.

In *Gould,* the board ordered the employees whose jobs were abolished in bad faith to be reinstated. The only difference of any substance in this case so far as the board's consideration of bad faith was that there was a change of one of the board members so that the vote of the board changed from two-to-one in favor of finding bad faith to two-to-one rejecting a finding of bad faith.

The trial court correctly ruled that the order of the board rejecting the recommendation of the hearing examiner was erroneous because the recommendation of the hearing officer, that the abolishment of appellees' jobs be disaffirmed, was based upon bad faith in handpicking civil service employees in order to avoid application of the seniority system and retention rights provided by civil service. The board did not specifically reject that factual finding. Its error was one of law in that it found that bad faith must be predicated upon political or personal motivation if all procedural steps are properly taken. We reject that limited definition of bad faith, as we did in *Gould.* Where the intent and consequence of the employer's method is to subvert the civil service system to allow the selection of handpicked employees to fill jobs that should have been available to civil service workers based upon seniority and retention points, bad faith has been shown. The board did not find that employees were not handpicked to avoid operation of the civil service system. Instead, the board pointed to procedural aspects, such as that the handpicking was done before OBES submitted retention points to DAS and that JTPA was a new program, without addressing the important factual findings of its hearing examiner, which clearly showed subversion of the civil service system.

The trial court incorrectly held that the factual findings of the hearing examiner were to be given deference over factual findings by the board, since, pursuant to R.C. 119.09, the board can make *de novo* factual findings if supported by the record. However, there was no factual finding by the board that employees were not handpicked from CETA to JTPA. Hence, the hearing ex-

aminer's factual findings in this respect were left unaltered. The board's error was in concluding that if procedural steps were properly taken, and that if there was no personal or political animosity towards the employees, bad faith was not established. Hence, the error of the common pleas court was not prejudicial.

Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE and STERN, JJ., concur.

STERN, J., retired, of the Supreme Court of Ohio, was assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.