Dorothy LUPO, Plaintiff,

v.

George V. VOINOVICH, Frances Buchholzer, Peter Somani, Defendants.

No. C–2–93–458.

United States District Court, S.D. Ohio, Eastern Division.

July 22, 1994.

Alexander Morris Spater, Spater, Gittes, Schulte & Kolman, Columbus, OH, for plaintiff.

Pamela J. Gordon, Ohio Atty. General's Office, Columbus, OH, for defendants.

## MEMORANDUM AND ORDER

HOLSCHUH, Chief Judge.

Plaintiff, Dorothy Lupo, formerly an employee of the Ohio Department of Natural Resources (ODNR), filed this action pursuant to 42 U.S.C. § 1983 asserting that she was subjected to a series of adverse job actions, culminating in her termination from employment, as a result of her political affiliation and her supposed friendship with Dagmar Celeste, the wife of former democratic Governor Richard Celeste. After filing this ac-

tion *pro se,* counsel entered an appearance and, with the Court's permission, filed an amended complaint alleging that, in addition to her removal from employment in 1991, she was denied reemployment with the State of Ohio in 1993 for the same reasons which led to her earlier termination. She has requested declaratory relief, back pay, compensatory and punitive damages, attorneys' fees, costs, and other equitable relief.

In response to the amended complaint, defendants filed a motion to dismiss and/or for summary judgment as well as a motion for a protective order which requested the Court to stay discovery until the dispositive motion could be resolved. Lupo opposed both motions and moved for leave to file a second amended complaint which contains additional factual allegations responsive to defendants' assertion that the first amended complaint was overly conclusory in certain particulars. In response, defendants indicated that they did not oppose the filing of an amended complaint, but continued to assert that the doctrine of administrative *res judicata* bars any complaint about the job actions taken in 1991. Subsequently, they filed a motion to stay the proceedings in their entirety based upon the pendency of litigation in the Franklin County Court of Common Pleas which resulted from Lupo's appeal of an adverse decision of the State Personnel Board of Review. Lupo has also opposed that motion. This Memorandum and Order is intended to dispose of all outstanding motions.

## I.

Before turning to the merits of the defendants' summary judgment motion, the Court must decide whether the motion to amend should be granted. Given the fact that this case, despite its age, appears still to be in the early stages of discovery, and because defendants do not oppose the filing of a second amended complaint, that motion is GRANTED. The Clerk is directed to detach and file the verified second amended complaint which is attached as Exhibit One to Plaintiff's Memorandum Contra Motion to Dismiss and/or for Summary Judgment.

It is helpful to discuss the effect of the filing of the second amended complaint on the issues raised in the motion for summary judgment. Initially, the motion presented three issues: (1) that the Ohio Court of Claims has exclusive jurisdiction over any pendent state law claims against public officials, at least until a determination of whether the defendants were acting manifestly outside the scope of their employment is made; (2) that Lupo's claims are barred by administrative *res judicata;* and (3) that all defendants are entitled to qualified immunity. The second amended complaint makes it clear that plaintiff is not asserting any pendent state law claims, and it also pleads, in much greater detail, the facts surrounding Lupo's first amendment claim. In their reply memorandum, the defendants have withdrawn, for the moment, their qualified immunity argument, although they reserve the right to assert that defense and other defenses in response to the second amended complaint. Thus, the impact of the second amended complaint has been to reduce the issues before the Court to the single question of whether Lupo's demotion and termination claims are barred by the doctrine of administrative *res judicata.* The Court turns now to the facts surrounding that claim, as evidenced by the documents which both parties have filed as part of the record in this case. The Court notes that, although none of the parties' documentary submissions consist of certified records or documents which are authenticated by affidavit as required by Fed. R.Civ.P. 56(c), no party has objected to any of these exhibits on grounds that they are not authentic. Consequently, the Court will proceed to consider the parties' documentary submissions as having evidentiary value.

## II.

In 1991, Lupo was employed as a Natural Resources Administrator 4 (NRA–4) in the Division of Reclamation, which is part of the Ohio Department of Natural Resources. As such, she was a member of the classified service, which meant that she could not be removed from employment except for cause, and that she had certain seniority rights which permitted her to "bump" into other positions for which she was qualified if her job was abolished.

In May of that year, Lupo's NRA–4 position was abolished. Lupo attempted to bump into an available NRA–3 position, but was denied the position on the ground that she was not qualified. Ultimately, she was assigned to an NRA–2 position in the Division of Soil and Water.

After holding that position for several months, Lupo was advised that she was being "displaced" from that position. At the time that she received that notice, she would have been entitled to "bump" into one of two NRA–1 positions occupied by other employees. However, the first notice of displacement was rescinded, and was then followed, several weeks later, by a second notice of displacement. Before the second notice of displacement became effective, both NRA–1 positions were abolished, so that when Lupo's displacement became effective, she no longer worked for ODNR.

As was her right under state law, Lupo then filed an administrative complaint with the State Personnel Board of Review contesting the series of job actions leading to the termination of her employment. Pursuant to Ohio Revised Code § 124.03, the State Personnel Board of Review (SPBR) has the power to review and affirm, modify, or disaffirm any job actions affecting members of the classified service. The matter was tried before an Administrative Law Judge, who concluded that the abolishment of Lupo's NRA–4 position and the refusal to permit her to bump into the NRA–3 position conformed with state law, but that circumstances surrounding her displacement from her NRA–2 position demonstrated that ODNR had acted in bad faith. Pursuant to Ohio Admin. Code Section 124–7–01(A) "[j]ob abolishments and layoffs shall be disaffirmed if the action was taken in bad faith." Objections were filed to that Report and Recommendation, and in an opinion dated May 27, 1992, the SPBR reversed the Administrative Law Judge with respect to the latter determination, and thus resolved all issues against Lupo and in favor of ODNR.

Lupo appealed the adverse decision of the SPBR to the Franklin County Court of Com-

mon Pleas in accordance with Ohio Revised Code § 119.12. On July 13, 1993, the Common Pleas Court remanded the matter to the SPBR for a further determination on one issue, that being whether Lupo had accumulated two years of continuous service with ODNR and therefore had obtained certain statutory rights regarding her NRA–4 position. The SPBR subsequently reaffirmed its decision, and another appeal of that decision is pending in the Franklin County Court of Common Pleas. It is the pendency of that litigation which forms the basis for the defendants' motion to stay this case.

### III.

*Res judicata,* or claim preclusion, and collateral estoppel, or issue preclusion, are concepts with a long history in the law. Originally, of course, they applied to judgments rendered or factual issues litigated and resolved in the course of judicial proceedings. Thus, for example, both Article IV, Section 1 of the United States Constitution, (the Full Faith and Credit Clause), and 28 U.S.C. § 1738, which carries the precepts of the Full Faith and Credit Clause over to United States Courts, speak in terms of "judicial proceedings." Nevertheless, with the development of administrative bodies possessing adjudicatory or quasi-adjudicatory powers, *res judicata* and collateral estoppel principles have come to be applied not only to judicial determinations but also to administrative determinations that are thought to be "judicial" in nature.

■ The United States Supreme Court, in *dictum* in *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), stated that decisions of administrative adjudicatory bodies can be given *res judicata* effect so long as the administrative body acted in a judicial capacity, and had resolved factual disputes that the parties had a fair opportunity to litigate before it. Subsequently, Ohio adopted as a rule of law the *Utah Construction dictum,* and now applies administrative *res judicata* to an administrative agency decision where those prerequisites are met. *Superior's Brand Meats v. Lindley,* 62 Ohio St.2d 133, 16 O.O.3d 150, 403 N.E.2d 996

(1980). As explained in *Pullar v. Upjohn Health Care Services,* 21 Ohio App.3d 288, 21 OBR 433, 488 N.E.2d 486 (Cuyahoga Co. 1984), it is also necessary that any factual disputes resolved by an administrative agency be clearly relevant to issues properly before that agency, and that the parties have an opportunity to seek review of any adverse findings. Further, the Courts are advised to use caution in applying administrative *res judicata.*

■ Prior to 1986, there had been some uncertainty in this circuit as to whether the results of state administrative proceedings could be given *res judicata* effect in a federal court action involving claims under 42 U.S.C. § 1983. However, in *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Supreme Court made it clear that, as a matter of federal common law, the federal courts should "apply principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity." *Id.* at 797, 106 S.Ct. at 3225. The Court reasoned that the purposes behind the Full Faith and Credit Clause require federal courts to "give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *Id.* at 799, 106 S.Ct. at 3226. Thus, at least with respect to facts actually found by an Ohio administrative agency (that is, for collateral estoppel purposes), this Court must give the findings of the State Personnel Board of Review the same effect that those findings would have on subsequent litigation in a state court. The Court now turns to Ohio law to determine how Ohio courts view the application of *res judicata* and collateral estoppel principles to decisions of administrative agencies.

The Montgomery County Court of Appeals, in *Bench Billboard Co. v. City of Dayton,* Case No. 13015 (April 10, 1992), 1992 WL 80772, at *3, 1992 Ohio App. LEXIS 2081, slip op. at 8–9, succinctly described these two doctrines under Ohio law as follows:

> *Res judicata* encompasses two concepts: estoppel by judgment, and collateral estoppel. Estoppel by judgment prevents the relitigation of the same cause of action in a

subsequent lawsuit. It does not apply when the causes of action are not the same. To constitute a bar, there must be identity not only of subject matter, but also of the cause of action. If the same facts or evidence would sustain both, the two actions are considered the same. If the two rest on different facts or if different evidence is required, a judgment on one is not a bar to a suit on the other.... 

Collateral estoppel differs from *res judicata.* A claim of right or cause of action which could have been, but was not, litigated in a prior lawsuit between the same two parties is barred by *res judicata.* Collateral estoppel, by contrast, prevents the relitigation of an issue that has been actually and necessarily determined in a prior action. A right, question, or fact in issue that was necessarily determined by the court in a final judgment cannot be litigated in a subsequent suit between the same parties even when the subsequent suit is based on a different cause of action.... Factual issues not necessarily decided in a prior litigation are not subject to collateral estoppel even though they could have been raised and decided. The collateral estoppel version of *res judicata* is particularly fact-sensitive, which makes it important to remember that both *res judicata* and collateral estoppel are affirmative defenses that must be pleaded and proven.

Much of the defendants' argument appears to rest on collateral estoppel grounds, i.e., that Lupo actually litigated before the SPBR the issue of whether her various positions were abolished due to her political affiliation, and that the SPBR actually decided that issue. There is, however, an element to the defendants' argument that sounds in claim preclusion as well. Defendants assert that, even if Lupo did not directly litigate that issue before the SPBR, she was entitled to do so under the rubric of "bad faith," so that any failure to present the issue, or present it fully, precludes her from raising the same claim in this case. The Court will examine each of those contentions separately.

### A. *Collateral Estoppel*

■ As noted above, collateral estoppel, or issue preclusion, is applied when parties have actually litigated an issue and the tribunal has made a decision on that issue. Especially with respect to administrative agencies, the Ohio courts are cautious to insure both that the issue was actually litigated and determined by the tribunal, and that it was essential to the judgment. Indeed, these elements arise out of due process concerns surrounding the application of the doctrine of collateral estoppel:

> [A]n absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action.

*Cooper v. City of North Olmsted,* 795 F.2d 1265, 1268 (6th Cir.1986), quoting *Goodson v. McDonough Power Equipment Co.,* 2 Ohio St.3d 193, 200–01, 2 OBR 732, 738–40, 443 N.E.2d 978, 985 (1983). As noted above, this is a particularly fact-sensitive inquiry, and the Court must examine closely the administrative proceedings to see whether the issues which Lupo raises in this case were actually litigated before the SPBR, determined by that body, and essential to its judgment. In making that determination, the Court is necessarily limited to the records supplied to it by the parties, which include only the decisions rendered by the Administrative Law Judge and the Board. Although the defendants have represented in their brief that Lupo advanced certain arguments to the Administrative Law Judge or to the Board, to the extent that the written decisions do not reflect that she did so, the Court is unable to give credence to the defendants' unsupported assertions in that regard.

In this § 1983 action, which is premised upon decisions of the United States Supreme Court in cases such as *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the key factual issues are whether political affiliation was an appropriate requirement for Lupo's NRA–4 position or any of the other positions which she held or was refused entry into, and, if not, whether the abolishment of

those positions or the refusal to hire her was motivated, at least in substantial part, by consideration of her political affiliation. According to the second amended complaint, the facts which support her assertion that political affiliation or friendship with Dagmar Celeste motivated her termination include a directive from Governor Voinovich to reorganize state government in order to "dismantle the 'democratic organization'" and the placement of Lupo's name on a list submitted by her agency indicating that she was a known Celeste supporter and had transferred from the unclassified to the classified civil service within the past two years. She asserts that her name then appeared on a "discharge list" that Governor Voinovich's Director of Personnel presented to the head of ODNR, and that the actions of ODNR Director Bucchol-zer which ultimately resulted in the elimination of her employment with the State of Ohio were a direct result of this targeting of her for layoff. She asserts that these actions violated her rights under the First Amendment to the United States Constitution, and are actionable under 42 U.S.C. § 1983.

Obviously, the SPBR, an administrative agency, does not have jurisdiction to adjudicate claims arising under the United States Constitution or under federal statutory laws such as § 1983. Rather, its jurisdiction is limited by statute and by regulation. It can hear claims brought only by members of the classified service within the State of Ohio, and can review only adverse job actions taken by a state agency. When such a job action is challenged, the Board requires the appointing authority to support abolishment of any job position by showing the lack of need for such a position, that the abolishment contributes to the efficiency or economy of the agency's function, or that there has been a lack of work for the position of at least one year in duration. Ohio Admin.Code § 124–7–01(A)(1). It must also insure that proper procedures were followed with respect to job abolishments. Finally, it is given the authority to disaffirm job abolishments or layoffs if the agency's action was taken in "bad faith." Ohio Admin.Code § 124–7–01(A). "Bad faith" is not defined either in the Ohio Admin.Code or in Chapter 124 of the Ohio Revised Code.

Because issues relating to the need to abolish a position as it relates to the efficient or economic operation of the agency, and the procedural prerequisites for such abolishment, are completely unrelated to Lupo's claim of political affiliation discrimination, the issue before the Court may be more narrowly focused. Simply stated, the question is whether the SPBR's ultimate determination that ODNR did not act in bad faith in conjunction with the various job actions taken against Lupo is, for collateral estoppel purposes, the same factual issue as the question of whether she was discharged due to her political affiliation. Stated another way, in determining that bad faith was not present, did the SPBR actually and necessarily determine that political affiliation played no role in the various job actions taken? For the reasons stated below, the Court must answer this question in the negative.

The extent to which Lupo argued before the SPBR that political affiliation played a role in her layoff is unclear. There is no direct statement in either the ALJ's or Board's decision suggesting that she advanced such an argument. At page 26 of the ALJ's decision, the statement is made that a Mr. Kizor testified at the administrative hearing that "in his exit interview with Ms. Lupo in May, 1991, he mentioned hearing a rumor to the effect that Ms. Lupo had been a personal friend of Dagmar Celeste, the wife of the former Governor of the State of Ohio, Richard Celeste." However, as the Administrative Law Judge also noted, "[n]o other evidence on this point has been presented to the record in this matter." That statement would certainly suggest that, apart from the comment of Mr. Kizor, Lupo neither introduced evidence concerning the specific manner in which she claims to have been targeted for a layoff, nor did she advocate the proposition that, as a result of having been so targeted, ODNR acted in bad faith. Further it suggests that the issue was not raised with respect to Lupo's subsequent displacement from the NRA–2 position and the abolishment of the two NRA–1 positions into which she otherwise would have been able to bump, since those actions occurred after May, 1991.

The decision of the SPBR is completely silent as to what positions she advocated before it on this issue. The decision makes only brief reference to two indicia of bad faith, one being the comment quoted above, and the other being evidence that Lupo was called into work while on disability leave in order to be presented personally with a notice of the abolishment of her NRA–4 position, but under circumstances where the reason for the request that she come into work was concealed from her. The SPBR concluded that these two matters were insufficient to demonstrate that ODNR had acted in bad faith. It made no factual findings that dealt with any subsidiary issue of retaliation based on political affiliation.

Certainly, there is no clear factual finding by the SPBR to the effect that Lupo's name was not placed on a "hit list" of known Celeste supporters or that the various abolishments of her job and jobs into which she could have "bumped" were not motivated in substantial part by such considerations. The defendants do not suggest otherwise, but argue that the more general finding of the absence of bad faith was, in effect, a determination of the same factual issue, so that it may be given collateral estoppel effect in these proceedings.

■ A review of decisions from Ohio courts indicates that, at least in the area of administrative *res judicata*, the concept of what is the "same issue" has been very narrowly construed. For example, a number of courts have held that the question of whether just cause exists to discharge an employee for purposes of entitlement to unemployment compensation, and under an employment contract which prohibits discharge except for good cause, are not, despite their seeming similarity, the same issue. In so holding, the Court in *Distelzweig v. Hawkes Hospital of Mt. Carmel*, 34 Ohio App.3d 277, 279, 518 N.E.2d 43, 46 (Franklin Co.App.1986), noted that "the doctrine of collateral estoppel does not apply to a mere overlap of issues." Thus, although the statutory and contractual issues concerning the existence of just cause for discharge are similar, in that much the same evidence would apply to both, conceptual differences between the two concepts prevented the application of collateral estoppel. *Distelzweig* has been followed by other Ohio courts. *See, e.g., Adams v. Harding Machine Co.*, 56 Ohio App.3d 150, 565 N.E.2d 858 (Logan Co.1989).

It appears that this relatively strict construction of what issues are the same, for purposes of applying administrative *res judicata*, is motivated in part by the need to apply that doctrine with flexibility and to qualify or reject it "when its application would contravene an overriding public policy or result in manifest injustice." *Jacobs v. Teledyne*, 39 Ohio St.3d 168, 171, 529 N.E.2d 1255, 1259 (1988). It is also motivated by due process concerns about depriving a party of the right to a judicial determination of matters through the use of administrative *res judicata*. Thus, both *Distelzweig* and *Adams* focused upon whether it was foreseeable to the party before the administrative agency that the agency's finding on the issue of "just cause" would later preclude the plaintiff from litigating a breach of contract action, and whether the legislature appeared to make the agency the arbitrator of what were essentially legal issues, i.e., the terms and conditions of an employment contract and whether those terms and conditions had been breached.

Applying those principles to this case, the Court concludes that the issue of "bad faith" under Ohio Admin.Code § 124–7–01(A) and the issue of discharge motivated in substantial part by political affiliation are not the same factual issue. First, Ohio law does not appear clearly to define what is meant by "bad faith" in the context of job abolishment in the classified service. If there is a definition which pervades the case law, it is that "[b]ad faith may be established by showing appropriate evidence or inferences therefrom that the job abolishments were not made in good faith and were used as a subterfuge to subvert the civil service system." *State ex rel Gould v. Ohio Bureau of Employment Services*, 28 Ohio App.3d 30, 32, 28 OBR 40, 41, 501 N.E.2d 648, 650 (Franklin Co.1985). By "subverting the civil service system," the Court apparently meant undermining the civil service retention rights of employees or avoiding the application of the seniority sys-

tem within the classified service based upon employees' retention points. *Id.* at 33, 28 OBR at 43, 501 N.E.2d at 651. *See also Weston v. Ferguson,* 8 Ohio St.3d 52, 8 OBR 523, 457 N.E.2d 818 (1983), which characterizes bad faith as a subterfuge to reassign the duties of a person in the classified service to another individual simply in order to eliminate that person, rather than the person's position.

The only reported case which appears to mention the concept of political affiliation in the context of bad faith is *Blinn v. Ohio Bureau of Employment Services,* 29 Ohio App.3d 77, 29 OBR 88, 502 N.E.2d 665 (Franklin Co.1985). In that case, the SPBR apparently concluded that, because there was no evidence of political animus against any of the displaced employees, it was precluded from making a finding of bad faith. In reversing that determination, the Court noted that it was error for the Board to believe "that bad faith must be predicated upon political or personal motivation if all procedural steps are properly taken." *Id.* at 80, 29 OBR at 90, 502 N.E.2d at 668. The Court repeated its holding, in *Gould, supra,* that bad faith was the equivalent of arranging matters so as to eliminate jobs that should have been available to civil service workers based on seniority and retention points.

Based on *Blinn,* it may be possible, through negative implication, to conclude that the targeting of specific civil service employees for job abolishment based upon their political affiliation, which targeting would include eliminating other jobs which they could "bump" into based upon their seniority and retention points, would be evidence of bad faith. Nevertheless, it appears that bad faith is both something more and something less than a claim of political affiliation discrimination. Given the restrictive view which the Ohio courts have taken in this area, the Court believes that the issues are not the same. In that regard, this case is remarkably similar to *Barnes v. McDowell,* 647 F.Supp. 1307, 1311 (E.D.Ky.1986), *rev'd on other grounds,* 848 F.2d 725 (6th Cir. 1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 780 (1989), where the Court stated:

The First Amendment issue was not litigated before the personnel board and it made no findings thereon either express or implied. Therefore, since we are concerned with collateral estoppel rather than *res judicata,* the causes of action between the administrative proceeding and this proceeding being different, the issue of unconstitutional motivation is not precluded by the administrative decision.

Finding that language to describe accurately the facts of this case, this Court similarly declines to apply collateral estoppel effect to the SPBR's determination that Lupo's positions were not abolished in bad faith.

### B. *Res judicata*

■ As noted above, the defendants appear to argue not only that the political affiliation issue was actually litigated by the parties to the SPBR proceeding under the guise of the "bad faith" concept, but that, if it was not litigated, Lupo had an opportunity to do so. Thus, having failed to raise it, and having had a finding of the absence of bad faith entered against her, she should now be precluded from raising the same issue here. Essentially, that is an assertion of claim preclusion rather than issue preclusion, because it depends upon whether Lupo had both the opportunity and the obligation to raise before the SPBR a claim of political affiliation discrimination, even if she did not do so.

■ The Court believes that this contention can be rejected rather summarily. First, claim preclusion is generally inapplicable to judgments entered by courts or bodies lacking subject matter jurisdiction to consider the issues presented in a later proceeding. As the Sixth Circuit has noted, Ohio appears to subscribe to the position that "a judgment rendered by a court lacking subject matter jurisdiction ought not to be given preclusive effect." *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith,* 918 F.2d 658, 663 (6th Cir.1990). *See also Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 382, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985) ("claim preclusion generally does not apply where '[the] plaintiff was unable to rely on a certain theory of the case . . . because of the limitations on the subject matter jurisdic-

tion of the courts. . . .' " quoting Restatement (2d) of Judgments § 26(1)(c) (1982)). Certainly, the general question of whether Lupo's rights under the first amendment were violated by the job actions taken by ODNR falls outside the scope of those issues which the SPBR is authorized to determine, and her claims for compensatory and punitive damages and attorneys' fees, being relief which the SPBR could not award her, also could not be precluded by her failure to raise this claim before the SPBR.

■ To be sure, Ohio law does, under certain circumstances, apply claim preclusion to adjudications by administrative agencies. *See Set Products, Inc. v. Board of Zoning Appeal,* 31 Ohio St.3d 260, 31 OBR 463, 510 N.E.2d 373 (1987); *Scott v. City of East Cleveland,* 16 Ohio App.3d 429, 16 OBR 500, 476 N.E.2d 710 (Cuyahoga Co.1984). A court asked to do so must consider whether the issue before the administrative agency was the same, whether the agency had the ability to grant relief with respect to that issue, and whether the party had a reason to believe that the issue should be litigated there. *Braun v. Ohio Bell Telephone,* 745 F.Supp. 1286 (S.D.Ohio 1988), *aff'd,* 879 F.2d 864 (6th Cir.1989). In this case, however, the Court's conclusion that the bad faith issue is not the same as the political affiliation discrimination issue cuts strongly against the application of claim preclusion principles. This Court simply does not believe that the Ohio legislature intended constitutional claims such as Lupo's to be presented to and adjudicated by the SPBR, nor did it intend litigants such as Lupo to be foreclosed from pursuing those claims in later judicial proceedings if the claims were not presented to the SPBR.

## C. *Conclusion*

The Court concludes that the only way in which collateral estoppel principles would prevent Lupo from relitigating the matters raised in her complaint would be if she actually presented to the SPBR the claim that her political affiliation played a substantial role in the abolishment of her position and her ultimate discharge from ODNR, and if the SPBR made specific factual findings on that issue. As noted above, the defendants, who have the burden of demonstrating that all prerequisites for the application of *res judicata* principles have been met, have not convinced the Court that Lupo presented this issue directly, and have not persuaded the Court that the SPBR's general finding of the absence of bad faith is tantamount to a factual determination that political affiliation did not play a substantial role in Lupo's loss of her employment. Further, the Court does not believe that the Ohio legislature intended the SPBR to be the primary adjudicatory body for claims arising under the United States Constitution and actionable in either a state or federal court under 42 U.S.C. § 1983. For all of those reasons, the defendants' motion for summary judgment will be denied.

An additional note is in order. It appears that the defendants intend to pursue, either by way of a motion to dismiss or a subsequent motion for summary judgment, the issue of qualified immunity with respect to Lupo's first amendment claims, and may also request a stay of discovery until that issue is resolved. The Court believes that a recent decision of the Sixth Circuit Court of Appeals, *Williams v. Kentucky Cabinet of Human Resources,* 24 F.3d 1526 (6th Cir.1994), is instructive with respect to the application of qualified immunity to claims such as Lupo's. Although that case involved an adverse job action allegedly taken in retaliation for the employee's exercise of free speech rights under the first amendment, the type of balancing which is done in that context and in this context is similar. The defendants in *Williams* had argued that because a balancing of interests is required, qualified immunity almost automatically attaches to any such decision because it is difficult to determine what a reasonable official would have believed about the way in which the balancing should be resolved. The Court rejected that argument, and indicated that there are fairly bright lines in that area to guide the exercise of discretion of reasonable state officials, and that the plaintiff's allegations were sufficient to withstand a qualified immunity challenge. *See also National Federation of the Blind v. Voinovich,* Case No. C–2–93–528 (S.D.Ohio March 28, 1994) (Beckwith, J.). Those decisions are commended to defendants' atten-

tion to be considered in conjunction with the filing of any future motion raising qualified immunity as a defense.

The Court also notes that Lupo seeks equitable and declaratory relief, neither of which is affected by an assertion of qualified immunity. Lupo has argued that a stay of discovery should not be imposed as long as these issues remain viable. The parties are directed to attempt to resolve extrajudicially any issues concerning discovery before presenting them to the Court in conjunction with any yet-to-be-filed motion raising the qualified immunity defense, and in that context their attention is also directed to the decision in *Denton v. Twyford*, 142 F.R.D. 140 (S.D.Ohio 1992), holding that a stay of discovery may be inappropriate where the qualified immunity issue will not, even if decided in defendants' favor, require dismissal of the entire action or eliminate the need to take discovery from defendants who, even if they are immune from suit, are nonetheless witnesses whose testimony is essential to the issues remaining in the case.

### IV.

Based upon the foregoing, defendants' motion to dismiss and/or for summary judgment is DENIED. The motion to stay discovery pending resolution of that motion is DENIED AS MOOT. The motion for a stay of all proceedings is DENIED.