OPINION
{¶ 1} In 2001, the Ohio Department of Taxation ("ODT") reorganized positions in the organization and several positions were abolished based on a provided rationale of the efficient operation of the ODT. Many of the affected employees filed appeals with the State Personnel Board of Review ("SPBR"). The cases were consolidated and a hearing was held before an Administrative Law Judge ("ALJ") in November 2002. The *Page 2 
ALJ issued a report and recommendation finding that ODT's actions constituted bad faith which required a disaffirmance of the abolishments. The ALJ concluded the abolishment of the existing positions of tax commissioner agent supervisor was purposely delayed until the newly created classification of tax auditor manager was filled. Thus, appellees were prevented from exercising their displacement rights. Further, the ALJ found that the rationale provided by ODT for the abolishments was due to reasons of efficiency but, at the hearing, the evidence demonstrated that the basis was for reasons of economy. The ALJ concluded that reasons of increased efficiency and economy are two separate rationales provided by R.C. 124.321(D) and ODT's failure to allege the true rationale for the abolishments also required disaffirmance.
 {¶ 2} ODT filed objections to the ALJ's report and recommendation and many of the employees' cases were resolved. The SPBR adopted the findings of the ALJ but rejected her recommendation. The SPBR found that ODT complied with the pertinent procedural and substantive prerequisites and complied with the legal standards for abolishment as set forth inPenrod v. Dept. of Admin. Serv. (SPBR case No. 02-ABL-08-0276), and did not engage in bad faith.[1]
 {¶ 3} The three remaining employees, Rita K. Henschen, Jeffrey L. Point, and David T. Buken, filed appeals to the common pleas court. The common pleas court determined that SPBR's order was not supported by reliable, credible, and probative evidence and was not in accordance with law. *Page 3 
 {¶ 4} ODT filed a notice of appeal in two cases, No. 06AP-341, involving Henschen and Point, and No. 06AP-342, involving Buken. The cases were consolidated, but the appeals pertaining to Point and Buken have since been dismissed and this appeal only involves Henschen. ODT raised the following assignment of error:
 The court of common pleas abused its discretion when it adopted the finding of the ALJ regarding bad faith as to Point and Henschen.
 {¶ 5} R.C. 119.12 provides the standard of review for the common pleas court, as follows:
 The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *
 {¶ 6} In Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988),40 Ohio St.3d 257, 260-261, the Ohio Supreme Court set forth the standard of review for an appellate court as follows:
 In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion `* * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' State, ex rel. Commercial Lovelace Motor Freight, Inc., v. Lancaster (1986), 22 Ohio St.3d 191, 193 * * *. Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's *Page 4 
judgment. See Rohde v. Farmer (1970), 23 Ohio St.2d 82 * * *.
 The fact that the court of appeals, or this court, might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.
 {¶ 7} On questions of law, however, the court of appeals review is plenary. Univ. Hosp., Univ. of Cincinnati College of Medicine v. StateEmp. Relations Bd. (1992), 63 Ohio St.3d 339, paragraph one of the syllabus.
 {¶ 8} In Our Place, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571, the court defined the evidence required by R.C. 119.12, as follows:
 * * * (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.
(Footnotes omitted.)
 {¶ 9} By their assignment of error, ODT contends that the common pleas court abused its discretion in adopting the finding of the ALJ regarding bad faith.
 {¶ 10} The testimony regarding the reorganization of ODT established that Thomas Zaino became the Tax Commissioner in July 1999. Prior to 2001, ODT had a number of district offices throughout the state and each office performed taxpayer services such as taxpayer assistance as well as field and desk audits. In January 2000, the department held a retreat at Deer Creek State Park, with a goal to develop a plan for restructuring the tax department. From this retreat developed the concept that the *Page 5 
department would be reorganized, creating a new auditing division, which would be separate from the taxpayer service division. Thus, the audit division would primarily perform field audits and the taxpayer service division would be responsible for the other taxpayer services. The goal was to have the audit division begin functioning July 1, 2001.
 {¶ 11} As part of the reorganization, a new Tax Auditor Classification series was to be created and added to the state's classification system. The new series included newly created Tax Auditor Agent Classifications, which were in a bargaining unit, and supervisory positions Tax Audit Manager 1 and Tax Auditor Manager 2, which were positions exempt from the bargaining unit. The Department of Administrative Services ("DAS") created the new tax auditor positions and revised the existing Tax Commissioner Agent positions. These new bargaining unit classifications became effective July 1, 2001. (Tr. at 428.) DAS determined that the existing Tax Commissioner Agent Supervisor and the newly created Tax Auditor Agent Manager positions were not similar. (Tr. at 425-426.) As a result, DAS filed an emergency rule making the Tax Auditor Agent Manager classification specifications and the revised Tax Commissioner Agent Supervisor classification specifications effective October 10, 2001. (Exhibit P.)
 {¶ 12} Prior to the anticipated effective date of July 1, 2001, ODT posted openings for the proposed supervisory positions in the Audit Division as Tax Commissioner Agent Supervisor positions. Candidates were interviewed and the positions were filled by July 15, 2001. Once the new classifications were approved by DAS, these positions would be classified as Tax Audit Agent Managers. *Page 6 
 {¶ 13} Before the Audit Division was created, Tax Commissioner Zaino and two Deputy Tax Commissioners held meetings at the district offices to discuss the creation of the two divisions and answer employee questions. There was no mention of job abolishments during that time period. (Tr. at 125.) Commissioner Zaino represented that the purpose of the reorganization and creation of the Audit Division was not designed to eliminate jobs. (Tr. at 757-758.) The monthly employee newsletter, "The Collector," which included a column by Commissioner Zaino, in March 2000, provided that the strategic plan did not include closing district offices. (Tr. at 745.) The August 2000 edition of "The Collector," included the representation that no agent would suffer a decrease in pay as a result of the newly created Audit Division. (Tr. at 752-754.) Again, in the September 2000 edition of "The Collector," Commissioner Zaino repeated that the purpose of a separate audit division was not to decrease any employee's pay. (Tr. at 755.)
 {¶ 14} As a result of these representations of no decreases in pay or job losses, many employees, including Henschen, did not apply for positions in the new Audit Division because of the belief that their jobs were safe. (Tr. at 936.) Henschen was a Tax Commissioner Supervisor 3, the manager of the Lima office, when her position was abolished on November 9, 2001, and the Lima office was closed. Henschen had been an ODT employee for 22 years. (Tr. at 932-933.) Henschen testified that she met the qualifications for one of the newly created audit positions but did not apply for two reasons. First, she felt her job was safe based on Zaino's representations and second, the move to the newly created auditing division would have been a lateral move for her *Page 7 
whereas for another employee in her office it would have been a promotion, so she decided to let him apply.
 {¶ 15} After the new and revised classifications were effective, on October 16, 2001, and the positions filled, ODT submitted a statement of rationale to DAS to abolish various positions, including Henschen's position. The job abolishment rationale provided the ground for the abolishments was the reorganization for the efficient operation of the appointing authority, not because of budget cuts. (Exhibit A.) However, Commissioner Zaino testified that, if it were not for the budget cuts beginning in July 2001, there would have been no need to eliminate any positions. (Tr. at 792.)
 {¶ 16} The ALJ found that ODT intentionally postponed the abolishment process until after the newly created Audit Division positions were filled and employees were moved from the old Tax Commissioner Agent Supervisor classifications into the new Tax Audit Agent Manager classifications. Thus, the civil service system was subverted, the abolishments were accomplished in bad faith, and must be disaffirmed.
 {¶ 17} Ohio Adm. Code 124-7-01 provides, as follows:
 (A) Job abolishments and layoffs shall be disaffirmed if the action was taken in bad faith. The employee must prove the appointing authority's bad faith by a preponderance of the evidence.
 (1) The appointing authority shall demonstrate by a preponderance of the evidence that a job abolishment was undertaken due to a lack of continuing need for the position based on: a reorganization for the efficient operation of the appointing authority; reasons of economy; or lack of work expected to last one year or longer.
 {¶ 18} In State ex rel. Gould v. Bur. of Emp. Serv. (1985),28 Ohio App.3d 30, 32, this court determined that "[b]ad faith may be established by showing appropriate *Page 8 
evidence or inferences therefrom that the job abolishments were not made in good faith and were used as a subterfuge to subvert the civil service system." In Blinn v. Ohio Bur. of Emp. Serv. (1985), 29 Ohio App.3d 77, this court found that bad faith does not require a finding that the employer acted with a political or personal animus. As inGould, this court found that "[w]here the intent and consequence of the employer's method is to subvert the civil service system to allow the selection of handpicked employees to fill jobs that should have been available to civil service workers based upon seniority and retention points, bad faith has been shown." Id. at 80.
 {¶ 19} The evidence presented established that the abolishments were delayed until after the new classifications in the Tax Auditor Agent series were created, effective, and filled. By doing so, ODT eliminated the possibility of any displacement rights of the holders of the abolished positions. The ALJ found such delay constituted bad faith, and we agree.
 {¶ 20} The newly created Audit Division began operations on July 1, 2001. Those employees were still classified in the old Tax Commissioner Agent and Tax Commissioner Supervisor series because the new classification series of Tax Auditor Agent and Supervisor series were not effective until October 10, 2001. However, there is evidence that ODT knew as early as July 1, 2001, that the budget situation was tight. The July 2001 edition of "The Collector" contained an article with a headline, "A Tight Budget" and discussed the additional cuts ODT was facing. (Exhibit 39.) On July 30, 2001, Commissioner Zaino sent employees an e-mail informing them that ODT was facing a projected $2 million deficit for the current biennium. (Exhibit 40.) Again, in the *Page 9 
August 2001 edition of "The Collector," Commissioner Zaino warned about a tight budget. (Exhibit 41.)
 {¶ 21} On August 8, 2001, a Deputy Tax Commissioner, John M. McAndrew, submitted a business plan to Commissioner Zaino. (Exhibit E.) McAndrew's plan included eliminating Tax Commissioner Audit Supervisor 2 positions in the Chicago office. A footnote in the recommendation provides, as follows:
 Currently two TCA SV2's are employed in the Chicago office. Only one TCA SV2 has been selected for the Audit Division. However, this selectee does not have seniority in the TCA SV2 series. Therefore, it is important that ODT not eliminate the TCA SV2 series in Chicago until after the selector is reclassified into the audit management series.
 {¶ 22} Another Deputy Tax Commissioner, Jim Lawrence, wrote a memorandum to Commissioner Zaino commenting on McAndrew's recommendations. (Exhibit 58.) Lawrence wrote, as follows:
 Other matters of concern.
 The report recommends delaying the elimination of the TCA SV2 in the Chicago Audit Office until the person in the other TCA SV2 position can be transferred to the Audit Division. If this is legal, maybe it should not be.
(Emphasis sic.)
 {¶ 23} The testimony of Francie Estrada, ODT Human Resources Administrator, also indicated that ODT made a deliberate choice to delay the abolishments until after the new classifications of Tax Auditor Agent Manager were created, effective, and filled. She testified that she met with DAS officials on October 11, 2001, to determine if her calculation of retention points was correct. (Tr. at 480-481.) The retention point *Page 10 
calculation did not include the people who had already been moved to the new Audit Division. (Tr. at 482-483.) She testified, as follows:
 Q Okay. When you began the retention point calculation, I am correct, am I not, that you did not include — when you began the retention point calculation for the Supervisor and Supervisor 3, you did not include any of the people who were in the Audit Division and going to be moved to Manager 1 and 2?
 A That's correct. It looks like that from these lists.
 Q Okay, right. Because they — in fact, it was your intention to not have them affected by the job abolishment?
 A It was the Department's intention, yes.
 Q Right. When I say yours, I don't mean you individually.
 A Yeah.
 Q It was the Department's intention not — and concerning the emergency rule, the emergency rule — it was so important to the Department of Taxation to get that emergency rule in place because the Department was not going to implement the job abolishments until that emergency rule was in place?
 A That's correct.
 Q Okay. Because it was your specific intent not to have those people affected. You needed to get them out of the 2 and 3 into the Manager 1 and 2?
 A That's what the Department wanted.
(Tr. at 482-483.)
 {¶ 24} The emergency rule filing, effective October 10, 2001, created the classification series of Tax Auditor Agent Manager. (Exhibit P.) The abolishments were announced on October 17, 2001. (Exhibit 44.) *Page 11 
 {¶ 25} ODT submitted the retention point list to DAS on October 16, 2001. If ODT had submitted the list prior to October 10, 2001, the newly hired employees in the Audit Division could not have received a classification change to the Tax Auditor Agent Manager classifications. Ohio Adm. Code 123:1-41-08(F), provides, as follows:
 Movement into and out of affected classifications. Once an appointing authority has submitted the list of retention points and employees to the director the appointing authority may not hire into or move employees into or out of affected classifications by means of promotions, intra-transfers, voluntary demotions, position control number change, lateral or classification changes, or reassignments, except that inter-transfers out of an agency or implementation of the findings of a position audit commenced prior to the date of the submission of the list for verification of retention points shall be implemented.
 {¶ 26} This rule would have prevented the Tax Commission Agent Supervisors hired in July 2001 from moving into the new Audit Division classifications if the retention list had been submitted to DAS before the employees moved into the Audit Division classifications. This evidence establishes that ODT deliberately delayed the abolishments until after the reclassifications of those employees in the Audit Division had occurred, thus preventing any displacement of the selected audit employees.
 {¶ 27} ODT argues that this case is distinguishable fromBlinn, supra, in which the court found that the Ohio Bureau of Employment Services abolished jobs in bad faith by making transfers, promotions, and lateral transfers to move selected personnel to safe positions before abolishing jobs. ODT argues that Henschen had the option to apply for Audit Division jobs and chose not to do so, and ODT did not handpick employees as in Blinn. However, the actions of ODT in delaying the abolishments until after the new classifications were effective and filled ensured that the Audit *Page 12 
Division employees would not be displaced by employees whose jobs were abolished. Thus, the case is very similar to Blinn.
 {¶ 28} Finally, ODT argues that Henschen must demonstrate that her individual civil service rights were interfered with by ODT's actions. We disagree, as the evidence demonstrated that the abolishments were accomplished in bad faith which requires that the job abolishments be disaffirmed. The common pleas court did not abuse its discretion in finding that SPBR's order was not supported by reliable, credible, and probative evidence and was not in accordance with law. ODT's assignment of error is not well-taken.
 {¶ 29} For the foregoing reasons, ODT's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 BRYANT and PETREE, JJ., concur. BOWMAN, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The common pleas court and this court rejected SPBR's reasoning inPenrod and Penrod has been certified to the Supreme Court of Ohio as being in conflict with McAlpin v. Shirey (1997), 121 Ohio App.3d 68, on the issue of whether the grounds of efficiency require a showing beyond a legitimate expectation of improved efficiency. The assignment of error in this case does not raise the issues addressed in Penrod, thus, we will not address them. *Page 1